J. H. KNOEPKER, Appellant, v. EMIL REDEL, Respondent.

Kansas City Court of Appeals, February 5, 1906.

1. **LANDLORD AND TENANT: Lease: Fraud: Verbal Contract.** Where a written lease between landlord and tenant is found to be fraudulent and of no force the verbal understanding between them becomes the contract.

2. **———: Contract: Instruction: Evidence.** The evidence relating to the terms of a verbal contract between a landlord and tenant is interpreted to mean that the parties mutually intended to deduct from the agreed cash rental the rental value of five dollars per acre for the acreage upon which the crop should be destroyed by overflow and to replant the injured land on shares, is interpreted.

3. **———: Subtenant: Waiver.** Where the contract stipulates against a reletting without the written consent of the landlord, such stipulation may be altered by subsequent agreement or waived by acquiescence; and this is so whether the stipulation is acompanied by forfeiture or not.

4. **———: ———: Under Tenant.** An agreement between a tenant and his subtenant is held to have left the tenant free to perform his contract with his landlord, and the subtenants were, as to the landlord, the tenant's servants, aiding him in the tillage of the land; and their presence is without effect on the contract between the parties.

5. **———: Damages: Instruction.** Although an instruction relating to damages is held vague and uncertain, yet under the conceded facts the error is harmless.

Appeal from Platte Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*Flournoy* and *Flournoy* for appellant.

(1) The court erred in refusing appellant's instruction numbered 1, which directed the jury to find for him. (2) Even if it be conceded that respondent

was entitled to go to the jury upon his defense based on alleged fraud, yet the court erred in giving the instructions given on his behalf, because said instruction is too vague and uncertain as to the measure of damages and gave the jury no basis upon which to estimate the amount of rent that might be due appellant. (3) The covenant or condition which respondent alleged was omitted from the lease was for his benefit, and as it is in derogation of law it should be strictly construed against him. Richardson v. Railway, 62 Mo. App. 1.

*A. D. Gresham* and *Sid Beery* for respondent.

(1) A party can maintain no action on a contract which he procures by fraud. Denny v. Kile, 16 Mo. 450. (2) An unusual provision in the instrument whereby the draftsman of the instrument obtains an advantage over the other party, excites suspicion of a fraudulent motive. Girard v. Wheel Co., 46 Mo. App. 79. In the eye of justice there is nothing sacred in a writing procured by unfair means. 46 Mo. App. supra. Lumber Co. v. Lumber Co., 89 Mo. App. 144, and cases cited.

JOHNSON, J.—Action by a landlord against his tenant to recover rent due and unpaid. In October, 1903, the parties signed a written lease, under the terms of which plaintiff leased a farm of one hundred acres in Platte county for the term of one year beginning March 1, 1904, for which defendant agreed to pay as rental the sum of five hundred dollars. Defendant paid two hundred dollars of the rent when the lease was signed, and executed and delivered to plaintiff his promissory note for the remainder of three hundred dollars to become due September 1, 1904. In the petition, plaintiff pleads the contract of lease, defendant's possession thereunder, the execution and delivery of the

note, its non-payment at maturity, and prays judgment for the amount due thereon. In his answer defendant, in effect, admits the execution of the lease and note, but avers they do not express the real contract made by the parties and were procured by plaintiff under false and fraudulent representations. No attack is made upon the sufficiency of the allegations of the answer, nor does any room for one appear, and therefore a statement of the facts in evidence, upon which defendant relies to defeat the written contract, will serve to present the issues made by the pleadings.

The rented land lies in the valley of the Missouri river and has been inundated at times when the water flowing in that river has been of extraordinary volume, but is of sufficient elevation to escape invasion from ordinary high water. It is under cultivation, corn being the crop usually grown upon it. The parties met in Independence, where plaintiff lives, and a conversation followed relative to the renting of the land for the year beginning with the following March and a verbal agreement was made. From this point on, the facts are in controversy and those detailed by defendant will be stated first.

Defendant is a German, who can neither read nor write the English language, and this fact was communicated by him to plaintiff before the written lease was prepared. The parties agreed upon a rental of $5.00 per acre or $500.00 for the farm. Defendant expressed the fear that the land might be overflowed and the crop thereon destroyed, to which plaintiff replied, "Why, it can't overflow. If it does overflow, your rent is paid and you don't owe me a dollar if that crop overflows." This appeared to satify defendant and then the subject of making a written contract was taken up. Defendant wished to have some third person prepare it, but plaintiff said he would do that and added, "Well, if you are afraid of me, I will go and get a water lease." He started to leave, then turned to defendant and

asked, "Can't you read?" Defendant answered, "No." Plaintiff said, "Well, if the crops overflow, you have got to put it in again if the water goes down in time." Defendant responded that he would if plaintiff would furnish the seed and take a third of his crop in payment of the rent. Plaintiff then went over to the courthouse and in a few moments returned, and said, "I have got two water leases, one for you and one for me, and the law is plainly printed on them about the bottom land subject to overflow. The law of the State of Missouri is plainly printed on them." Plaintiff then wrote upon the printed forms, after which he read one of them to defendant, who did not understand it and inquired, "How does this contract run?" Plaintiff then, pretending to read from the instrument, said in effect, "If it overflowed from the Missouri river, the rent was paid, but I was to put in the crop again, him to furnish the seed, and me to put it in for corn rent." Relying upon the assurance thus given by plaintiff, the lease and note were signed by defendant and two hundred dollars in money paid upon the rent.

The lease actually written was in the usual form and contained no agreement of the character mentioned, but defendant did not learn of the deception practiced upon him until late in the spring of the following year. He entered into the possession of the farm at the appointed time and planted all of it excepting a few acres in corn. During the spring, the greater portion of the land was overflowed four times by water from the river, the last being near the first of July. The crop on all but thirty-five acres was completely destroyed and the remainder injured. The yield of the entire farm did not exceed about thirteen hundred bushels, which were attached by plaintiff in this action and sold for $375.00.

Plaintiff, complying with defendant's request, visited the farm in June and, after making an inspection,

was asked by defendant, "What arrangement he would make to put the ground in again and he said, 'It was none of his business.' I said, 'Well, it is: aint we got a contract if the ground overflows, the rent was paid and you was to take a share of the crop?' He said, 'No.' I said, 'There is too,' and then he up and said it was a damned lie." Plaintiff did not furnish any seed for re-planting.

Plaintiff's version of the transaction appears in this extract from his testimony, "I wrote the lease on a printed form. . . . I do not know whether I read to Mr. Redel the copy I kept or the one I gave him. We talked about the matter at the time the lease was signed. . . . I told him the land had overflowed in 1903 and I had lost a portion of the crop but once in fifteen years. I did not agree or represent to defendant that if the river overflowed the land, I would give him a rebate on the rent. I did not read to the defendant or purport to read to him out of the lease that if the river overflowed the land, he would not have to pay the rent, that the note would not be due and the $200.00 cash he had paid would be given back to him, and that he was to put in the corn the second time, I to furnish the seed and take corn rent. I did not tell defendant that the lease was what was called a water lease and that under the terms of the lease the laws of Missouri would not allow me to collect one dollar rent in case the land was overflowed and the crops lost."

As to the damages caused by high water, the witnesses introduced by plaintiff are practically in accord with defendant. They say that the highest water occurred about July 1st and that seventy-five or eighty acres were then under water. They all agree that the crop on at least half the acreage was totally destroyed and that on the remainder, with the exception of twenty or twenty-five acres, more or less injured. There is no difference among the witnesses relative to the amount of corn produced or its value.

Knoepker v. Redel.

In the instructions given, the issue of fraud was submitted; the jury returned a verdict for defendant and plaintiff, after unsuccessfully moving for a new trial, appealed. Plaintiff insists the court committed error in refusing his request for a peremptory instruction.

In resolving the questions involved in this contention, we must accept as true the evidence introduced by defendant and reject that of his adversary in conflict with it. Looking at the case from this standpoint, we are without hesitation in declaring that the written contract was procured by plaintiff fraudulently, does not express the real agreement made by the parties and therefore is wholly void and of no effect. The facts that plaintiff knowing that defendant could not read professed to read from the instrument an agreement that he knew was not there, and thereby accomplished his purpose to deceive defendant, are enough to destroy the instrument and to present the antecedent verbal agreement as the only contract made by the parties.

But plaintiff says that with the written contract eliminated defendant cannot prevail, because under dedefendant's own statement of the agreement a total destruction of the crop by the overflow of the river was required in order to release defendant from liability under the note, and defendant admits that twenty or twenty-five acres of the crop were not touched by the invasion of water and ten or fifteen acres of the remainder but partially damaged.

It is true the agreement, as stated by defendant, does not expressly provide for the contingency of a partial destruction of the crop from this cause, but the controlling question is: What was the evident purpose and intention of the parties as disclosed by the terms of the agreement in the light of the circumstances under which it was made? Plaintiff argues that the position of defendant logically leads to the conclusion that if all of the crop, save the small fraction of an acre, had remain-

ed untouched by the river, the defense to the note now asserted could as well be maintained as it may be under the facts before us and rightly declares that such conclusion should not be entertained, but it is equally as preposterous to say that if all of the crop had been ruined, except the fraction of an acre, defendant would nevertheless be liable under the agreement to pay full cash rent. The facts and circumstances surrounding the transaction greatly aid in the ascertainment of the real intention of the parties. Both knew the land was subject to visitation by high water, that some parts of it were more elevated than others and consequently that the crop might suffer from a partial inundation of the land. Defendant exhibited great anxiety to protect himself against loss from overflow and the rent was fixed at so much per acre. A reasonable interpretation of the contract forces us to the conclusion that the parties mutually intended to deduct from the amount of the agreed cash rental the rental value at five dollars per acre of the acreage, upon which the crop would be destroyed or substantially injured by water from the river, and to replant and cultivate the land so injured upon crop shares. Any other construction would necessarily lead to extreme and whimsical conclusions, and practically emasculate the agreement, which the facts and circumstances certainly show the parties intended should apply in the event of a substantial injury to the crops from an invasion of the river.

The written lease, in terms, prohibited defendant from subletting the premises or any part thereof without the written assent of the landlord, but failed to provide a forfeiture or other penalty for the violation of this provision. We have discarded this instrument, but as it was read over to defendant and no complaint has been made by him against the insertion therein of this agreement, it is fair to assume that it was included in the contract actually made. Defendant, without obtaining the written assent of the landlord, underlet for-

ty-five acres of the land to one man and thirty acres to another under agreements for the payment of crop rental and with the understanding that if the crops were destroyed by flood, defendant "would take back the land." Several points are made by plaintiff relative to the effect upon the relation between the parties of defendant's alleged breach of contract in subletting portions of the farm, all of which will be disposed of in the ensuing discussion. In omitting to provide a penalty, such provision is to be regarded as a mere agreement or covenant as distinguished from a condition, and therefore its breach by the tenant would not give the landlord the right to re-enter or to enforce a forfeiture of the tenancy, but would leave him to his action at law to recover the damages, if any, sustained by him, or, under proper conditions, would afford him ground for equitable relief to prevent the continuance of the breach. [Wood on Landlord and Tenant, sec. 81.] And further, notwithstanding the requirement that the assent of the landlord to a subletting under he terms of the agreement must be in writing, parties, who make contracts, may by subsequent agreement unmake or alter them, or by his subsequent conduct, a party, for whose benefit a provision is made, may be held to have waived it. [Polk v. Assurance Co., 114 Mo. App. 514. Plaintiff was informed, before the subletting, of defendant's purpose to engage the services of under-tenants and made no objection, but apparently acquiesced in the arrangement. He must be deemed to have given his consent to the underletting and is in no position to insist upon the forfeiture of any of defendant's rights under the contract, nor would he be in such position had the agreement against subletting provided a forfeiture as the penalty of a breach thereof.

But it is urged that defendant, by subletting, placed himself in a position that prevented him from complying with his agreement to replant corn destroyed by flood and, further, that it would be unjust to per-

mit him to occupy a position, from which, under certain conditions (not before us here), he could have received full rent from his under-tenants and then claimed benefits from the damage done to their crops. Defendant's agreement with his undertenants left him free to perform his contract with plaintiff. They were to pay him corn rent and in the event of a flood from the river were either to replant or surrender the land to defendant. In either case, defendant could have replanted the land and rendered to the landlord his third of the crop grown; and as to the second point, as the defendant's subtenants were to pay defendant rent in kind and not in cash, it is impossible to conceive a situation under which defendant could have profited in the manner feared by plaintiff. If the under-tenants' crops were washed away, defendant could collect no rent. Damage to them damaged him in the proportion of his interest in them. As between him and plaintiff, the under-tenants were, in fact, his servants aiding him in the tillage of the land, and their presence in the case is without effect upon the rights of the parties. The demurrer to the evidence was properly overruled.

Finally, plaintiff contends that the judgment should be reversed and the cause remanded because plaintiff's instructions are "too vague and uncertain as to the measure of damages and gave the jury no basis upon which to estimate the amount of rent that might be due appellant." The instructions are subject to this criticism, but, under the conceded facts, the error must be held to be harmless. Plaintiff received and the verdict permitted him to retain the payment of $200 made by defendant when the contract was entered into. His own witnesses admit that the crop was seriously damaged on all but twenty or twenty-five acres of the land and that it was totally destroyed on at least half of the acreage. Under the views expressed, plaintiff was entitled to an allowance of five dollars per acre as rental for the uninjured portion of the land. After adding to

this the value of his interest in the corn grown upon the paritally damaged acres, the total could not possibly exceed the sum of two hundred dollars, the amount the jury awarded him as rent for the whole farm.

We find no substantial error in the record and the judgment is affirmed.  All concur.