ABE BLOND & LOUIS BLOND v. UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, Appellant, B. L. HOFFMAN.—80 S. W. (2d) 675.

Court en Banc, March 9, 1935.

*Harris & Koontz* for appellant.

*I. J. Ringolsky, Wm. G. Boatright* and *Harry L. Jacobs* for respondents; *Ringolsky, Boatwright & Jacobs* of counsel.

WESTHUES, C.—This is an appeal from a judgment against appellant on its surety bond and in favor of respondents in the sum of $10,000.

B. L. Hoffman, principal in the bond, was made a defendant, but did not appeal from the judgment entered. Respondents were the owners of a city lot at the northwest corner of Sixteenth and Wyandotte streets, Kansas City, Missouri. By a written contract, dated July 15, 1925, this property was leased to Hoffman for a term of ninety-nine years. The lot was unimproved. Hoffman agreed to pay a rental for the first five years of $1500 per year, payable in four equal quarterly installments on the 15th of July, October, January and April. The balance of the term the rental was to be $1800 per year, also payable in quarterly installments. In addition to the rental Hoffman agreed to pay all taxes to be assessed against the property. It was further agreed that Hoffman, at his own expense,

would erect a building on the lot at a cost of not less than $30,000, construction of this building to be commenced within eighteen months after the date of the lease. By a modification of the agreement this period of time was extended to five years. Hoffman was required to, and did, furnish a surety bond in the sum of $10,000, for the faithful performance of the obligations contained in the lease.

On January 15, 1927, Hoffman was in default because he had not commenced the erection of the building as agreed. At that time the terms of the lease were modified in certain respects, including the time in which the building was to be completed. The bond of $10,000, which had been given, was released by the modification agreement and a new bond provided for, which was given. It is this latter bond upon which this suit was based.

The quarterly installments of rent due October, 1928, and January, 1929, were not paid. Neither did Hoffman pay the taxes for the year 1928. On March 7, 1929, respondents notified Hoffman and appellant surety company of the default in the payment of the rent and taxes and that if the default continued for sixty days from the date of the notice the lease would be forfeited. On May 11, 1929, Hoffman and appellant surety company were notified that respondents had exercised their right to forfeit the lease because the default in the payment of the rental and taxes had continued for more than sixty days. Respondents thereupon took possession of the property and placed signs thereon reading, "For Sale Or Lease."

Since liability, under the terms of the bond, was the main and only issue in the case we will embody herein the provisions of the lease and bond pertinent to that issue. The forfeiture clause of the lease reads in part as follows:

"This lease is made upon the express condition that if lessee fail to keep and perform any of the covenants or agreements contained in this indenture, then this lease shall become void at the option of lessors, provided, the lessors shall first give to lessee at *lease* sixty days' written notice of intention to forfeit this lease, and shall set forth therein, the specific breach of lease and of lessors' intention to re-enter the premises and declare this lease forfeited, if such breach be continued. Such notice shall be served in the manner hereinafter provided and after the expiration of said sixty days' notice, this lease shall be void, provided the lessee is then in default respecting the complained of covenant or agreement, and the lessor shall then be entitled to the possession of the demised premises. . . ."

Section 3, modification agreement reads:

"The lessee as a part of the consideration of this agreement covenants and agrees to commence, at his own expense and within five (5) years from the date of this lease, the erection and construction on said premises of a building or buildings, according to plans and specifications, to be first approved by said lessors, for the purposes

hereinafter stated, to cost not less than thirty thousand dollars ($30,-000.00) and to fully complete and fully pay for said building or buildings within one year after commencement of construction, and lessee further agrees that upon commencement of the construction of said building or buildings he will faithfully continue such construction until the full completion thereof within the period provided for in this paragraph. Provided, however, that if such construction be delayed by act of God, strikes, riots or acts of public enemies, said period in which construction shall be completed shall be extended for a like period of time as the period of such delay, but in no event shall such extension of time be for a period greater than one year.''

Section 6 of this agreement reads as follows:

''That Section Thirteen (13) of the original lease is hereby stricken out in its entirety, and all rights thereunder waived by the parties hereto, and in lieu of said Section Thirteen (13), the following is agreed to and adopted by the parties hereto as a part of said lease:

'' 'Contemporaneously with the signing of this instrument and before the same shall be binding upon the parties hereto, lessee shall execute and deliver to lessors a good and sufficient surety company bond in the sum of Ten Thousand Dollars ($10,000) which shall be executed by a surety company authorized to do business in the State of Missouri, subject to the approval of lessors or their agents, conditioned upon and for the prompt and faithful payment of all rent and moneys hereunder, and for the faithful performance of all convenants, stipulations and agreements herein expressed upon the part of the lessee, by the said lessee to be kept and performed, including the complete erection and full payment for the building or buildings to cost not less than Thirty Thousand Dollars ($30,-000.00) to be constructed within five years from date of lease, and at least ten days before the commencement of construction operations (and for this purpose wherever the words 'construction operations' are used, 'construction operations' shall be deemed to commence when lessee begins the removal of any improvements on said premises, or the grading or excavation of same) lessee shall execute and deliver to lessors a good and sufficient surety company bond in an amount to the estimated cost of the proposed improvements, as lessors may ascertain such cost by the plans and specifications submitted by lessee and said bond subject to approval of lessors or their agents, conditioned upon the faithful performance of all of the terms, stipulations and conditions herein expressed on the part of the lessee to be kept and performed, and also including the prompt and complete payment of all bills and indebtedness for services, labor and material, arising from and in and about the construction and erection of such improvements, and the same shall remain in full force and effect until the completion of the proposed improve-

ments and until the same has been completely and entirely paid for by lessee. For the purpose of this section, it is agreed and inasmuch as it would be difficult or/and impossible to determine the exact amount of damages in the event lessee defaults in his covenants to erect the agreed improvements, according to the terms and conditions of this lease, within said period of five years from date of lease, it is now agreed between said lessors and lessee that damages for said breach shall be in the sum of Ten Thousand Dollars ($10,000), and said sum is and has been agreed upon as liquidated damages and shall not be held or considered as a penalty.' ''

The condition of the bond of appellant provides as follows:

''Now, therefore, the condition of this bond is such that if the principal, his assigns, successors, executors and administrators will well and truly pay all rents, taxes, insurance and such other moneys as he is bound to pay under and by virtue of the terms, conditions and stipulations of said lease, as modified, and will well and truly keep and perform all of the terms, conditions and covenants to be by him kept and performed as provided for and in said lease, as modified, and shall furnish a bond guaranteeing the first improvements mentioned in the above lease, as modified, and to be erected within five years from July 15th, 1925, and conditioned in the terms and in the manner provided for in the preceding paragraph by the terms of said lease as modified, including the condition that the building or buildings will be completed free of all and any liens of any and whatever nature and saving lessors harmless from all claims, liens and actions, whether at law or in equity, arising out of or by reason of the construction and erection of said improvements, then this bond shall be null and void; otherwise to remain in full force and effect.

'' And it is agreed and understood that in the event the said principal shall fail, neglect or refuse to comply with all or any of the terms, conditions and covenants of said lease as modified, upon lessee's part to be kept and performed, in reference and in regard to the commencement of the erection and construction of the said improvements to be erected within five years from July 15th, 1925, and/or to complete the same within the time and in the manner provided for by and in said lease as modified, and/or to furnish the lessors a bond, within the time and in and of the manner and character specified in said lease as modified, guarantee the construction and completion of and full payment for said improvements, and indemnifying said lessors in the manner as set forth in the preceding paragraph, and by reason of which default or defaults said lessors shall cause said lease to be declared forfeited, or declare said lease forfeited, then said lessors shall recover on this bond the full sum of Ten Thousand Dollars ($10,000.00) as liquidated damages, and not as a penalty.''

This bond also contains the following:

"No neglect, delay, failure to give notice, or forbearance on the part of the obligees, in enforcing payment of any rent, taxes or insurance provided for by the terms of said lease, or in enforcing the performance of any of the terms, covenants and conditions in said lease or in giving of time for payment or performance thereof, shall in any way release the principal or the surety, or either of them, or their heirs, executors, administrators or successors, in respect to any liability under the above written bond. *The exercise by lessors of the option to forfeit said lease, as modified, in the event of default on the part of lessee, shall in no manner limit or prevent the recovery of the amount of this bond by the obligees.*" (Italics ours.)

Respondents lay much stress upon the part italicized. It will be referred to later in the opinion.

Respondents offered evidence of the sale, as well as the rental, value of the lot with and without the building provided for in the lease. Evidence was also adduced to the effect that the value of the lot for rental purposes was much higher at the time the lease was entered into than at the time of the trial. This evidence was objected to by appellant, which objection was overruled by the trial court. Appellant offers no evidence.

The trial court made a finding that respondents had been damaged in excess of $10,000 and entered judgment against appellant and Hoffman for the full amount of the bond.

It will be noted that respondents forfeited the lease and took possession of the leased premises about one year and two months before the lessee was required, by the terms of the lease, to complete the building called for in the lease.

It is appellant's contention that the respondents, by the forfeiture of the lease and the taking possession of the premises, made it impossible for Hoffman to comply with his obligation of erecting a building and, therefore, appellant could only be liable under the terms of the bond for the payment of the accrued rent and taxes due at the time of the forfeiture. Respondents contend that they had a right, under the terms of the bond, to forfeit the lease and hold the surety liable for the full amount of the bond. In making this contention respondents rely upon the provision of the bond above set out and italicized by us.

Appellant and also respondents have cited the cases of Blanke Bros. Realty Co. v. American Surety Co., 247 S. W. 797, 297 Mo. 41 (court en banc), and Sharon v. American Fidelity Co., 172 Mo. App. 309, 157 S. W. 972, as supporting their respective contentions. From a reading of the two cases and the authorities cited in the course of the opinions it will be noted that it is well-settled law that a forfeiture of a lease by the lessor and his taking possession of the leased premises without any reservations in favor of the lessee terminates

absolutely the relation of lessor and lessee and discharges all the obligations of the lessee, not breached, which were to be performed after the date of taking possession. [See, also, 35 C. J. 1077, sec. 251, note 43; 16 R. C. L. 1137; Hinsman v. Marble Sav. Bank (Vt.), 156 Atl. 874; Producers' Packing Co. v. Fischer, 221 Mo. App. 639, 283 S. W. 747, l. c. 748 (1).]

■ It was agreed, by the terms of the bond, that in case Hoffman failed to perform any of the covenants, *with reference to the erection of the building,* provided for by the lease, the damages should be $10,000. This agreement as to liquidated damages was not made applicable to a failure to pay rent, taxes, insurance and other moneys which the lessee agreed to pay under the terms of the lease.

There was ample time remaining at the time of the forfeiture, under the terms of the lease and bond, to perform all of the covenants with reference to the construction of the building. The evidence does not indicate and it was not contended that Hoffman had abandoned the lease or that he did not intend to erect the building. The failure to pay the quarterly installments of rent and taxes was the only breach of the terms of the lease.

Respondents, by forfeiting the lease and taking possession of the premises, rendered impossible the performance of the terms of the lease with reference to making the improvements. Having elected to pursue that remedy and thereby terminate the contract they released the lessee from any obligation to be performed in the future and thereby discharged the surety, unless the terms of the bond clearly provided otherwise. [Blanke Bro. Realty Co. v. American Surety Co., and Sharon v. Fidelity Co., supra.]

The clause that the option to forfeit the lease in the event of a default should in no manner limit or prevent the recovery of the amount of the bond, canot be construed to mean that respondents were to recover damages for covenants not breached by the lessee. Most certainly it cannot be held to mean that the surety company would be liable for breaches of the contract made impossible of performance by the lessor. The Sharon case was cited in support of this theory. The case holds directly to the contrary. Under the plain terms of the lease and bond the liquidated damage provision applied only to a breach of a covenant with reference to the building to be constructed and not to the failure to pay rent and taxes. This, probably, for the evident reason that the damages for the failure to pay rent and taxes would be ascertainable while the damages for the failure to construct the building would be difficult of computation. Appellant surety company has not contended that the forfeiture either limited or prevented a recovery of whatever damages accrued by reason of nonpayment of rent and taxes. The forfeiture terminated the lease and deprived the lessee of any and all benefits to which he may have been entitled. At the same time the forfeiture

also released the lessee of all obligations to be performed in the future. Cases above cited.

In the Sharon case, supra, the bond stipulated that in case of a breach of the bond, by the principal, with reference to the improvement to be made, the surety had the right, if it so chose, to be subrogated to the rights of the principal. The principal abandoned the contract of lease six months prior to the time the improvements were to be completed. The surety company was notified thereof and given an opportunity to complete the contract. This the surety company failed to do. Suit was brought on the bond after the expiration of the time for the completion of the improvement. There was a forfeiture of the lease, but it was not an absolute forfeiture. The surety company was given the right, if it desired to do so, of taking possession of the property and completing the contract. It is apparent from the foregoing that the facts and provisions of the bond in the Sharon case were entirely different from the facts of the bond in the case at bar. In the case before us the lessors forfeited the lease and took absolute possession of the property without any reservations. It placed "For Rent" and "For Sale" posters on the property fourteen months before the time elapsed for the completion of the building. The lease provided that the building should be completed within one year after construction thereof had commenced. Suit was filed nine months before the time elapsed for the building to be completed. The Supreme Court of The United States in People of Porto Rico v. Title Guaranty & Surety Co., 227 U. S. 382, 389, 33 Sup. Ct. 362, made the following comment that may be applied to this case: "If, within the time allowed for performance the plaintiff made performance impossible, it is unimaginable that any civilized system of law would allow it to recover upon the bond for a failure to perform."

What we have said disposes of the case upon the merits. The surety company, appellant herein, was, under the evidence and the bond, only liable for the rent that had accrued and the taxes that Hoffman had failed to pay at the time of the forfeiture of the lease. It follows that the judgment of the circuit court must be reversed and the cause remanded. It is so ordered.

PER CURIAM:—The foregoing opinion by WESTHUES, C., in Division Two, is adopted as the opinion of the Court en Banc. *Coles, Gantt, Tipton* and *Hays, JJ.*, concur; *Frank, C. J., Leedy* and *Ellison, JJ.*, dissent.