**TEN–SIX OLIVE, Inc. v. CURBY.**
**No. 14773.**

United States Court of Appeals
Eighth Circuit.

Nov. 2, 1953.

James D. Dockery, St. Louis, Mo. (Max Sigoloff, St. Louis, Mo., was with him on the brief), for appellant.

Harold J. Abrams, St. Louis, Mo., for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken from an order of the bankruptcy court confirming and approving an order of the referee in bankruptcy which disallowed a claim for damages for anticipatory breach of a lease filed by the landlord of the bankrupt under Sec. 63, sub. a(9) of the Bankruptcy Act, 11 U.S.C.A. § 103, sub. a(9).

Count I of the amended proof of unsecured claim prayed for damages in an amount equal to one year's rental of the demised premises as specified in Sec. 63, sub. a(9). Count II asked for damages in the sum of $1,547 as expenses necessary in the removal of certain partitioning walls, erected on the leased premises and hereinafter discussed. The referee decided that the appellant landlord was not entitled to recovery of damages under either count of its claim.

The facts are not in substantial dispute. It appears that on May 22, 1945, appellant leased a six story building known as 1006 Olive Street, St. Louis, Missouri, to Nellie and Harold W. Siebens (hereinafter referred to as Siebens), a co-partnership doing business under the firm name of American Sporting Goods Co., for a period of eight years commencing September 10, 1945, and ending September 9, 1953, at a rental of $750.00 per month. On the same date a second lease was entered into by the same parties, identical in terms, for the same property for a term of seven years, commencing September 10, 1953, and terminating September 9, 1960. Thereafter Siebens, the lessees, made extensive and costly alterations upon the leased premises, including the erection of a new front on the building, installation of new sprinkler and air conditioning systems, new lighting fixtures, and the construction of several floor to ceiling partition walls on the third and fourth floors of the building, making several small offices. The "repair and alteration" clause of the lease provided, "All repairs and alterations deemed necessary by Lessee shall be made by said Lessee at its cost and expense with the consent of the lessor; and all repairs

and alterations so made shall remain as a part of the realty". Another covenant in the lease, which we shall hereinafter refer to as the "good condition" clause, provided, "The Lessee and all holding under said Lease agrees to use reasonable diligence in the care and protection of said premises during the term of this lease * * * and to surrender said premises at the termination of this lease in as good condition as received, ordinary wear and tear excepted".

On November 6, 1946, Siebens assigned the first lease to bankrupt, which was then operating under the name of Amco Sports Distributors, Inc. On March 2, 1948, the second lease was also assigned to bankrupt. By agreement dated March 2, 1948, appellant consented to the assignments, with Siebens and bankrupt agreeing to remain "jointly and severally" liable for the performance of all conditions under the leases. This agreement provided that the rental payable by the bankrupt should be $850 per month while Siebens should be liable only for $750 per month. Throughout the agreement Siebens were referred to as "Sureties".

The bankrupt occupied the premises and performed the conditions of the lease until March 18, 1949, when a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. was filed on its behalf and a trustee in reorganization was appointed. The reorganization trustee continued to occupy the building and pay the stipulated rent until July 6, 1950, when Dowd Sporting Goods Company was adjudged a bankrupt. Appellee was appointed trustee in bankruptcy on July 26, 1950. On August 8, 1950, certain of the fixtures and equipment were sold at public auction pursuant to court order and the premises were vacated on August 19, 1950, the date to which the rent had been paid.

Some time in June, 1950, appellant placed a small "For Rent" sign in the window of the leased premises and requested and received a set of keys to the building. Shortly thereafter it placed other "For Rent" signs upon the property. At this time Siebens' attorney informed appellant that Siebens wished to take over the property, in view of the fact that they were guarantors under the lease. Appellant refused to let them re-enter under the lease and wrote them a letter, reading in part as follows:

"You, of course, know the Dowd Sporting Goods Company has discontinued business and has sold all of its merchandise to a concern in St. Louis, authorized in reorganization proceedings pending in the Federal Court. As a result, that company *intends to surrender possession of these premises.*"[1]

"You and each of you is hereby discharged from liability as guarantors of the leases for the remainder of the term provided in the lease and are released from any further obligation under the terms of the leases."

There was also evidence tending to show that the appellant believed it could get from $1100 to $1400 per month rent from the building, in view of the extensive improvements that had been placed thereon. In addition to the "For Rent" signs mentioned, appellant used various other methods in attempts to secure a new tenant. After the sale of the fixtures by the trustee in bankruptcy, the auctioneer turned over the keys to the vacant premises to the appellant.

The evidence also is undisputed that appellant did not declare a forfeiture at or after the time the petition for reorganization was filed, as it might have done under a specific provision of the lease. Neither did it at any time give notice that it was attempting to re-let the premises for the benefit of bankrupt.

The referee found that there had been a surrender and acceptance of the lease by operation of law and denied recovery under Count I of the claim. He further found that the reorganization trustee did

---

1. Emphasis ours.

not at any time elect to adopt or reject the leases or petition the court to do so, nor did the trustee in bankruptcy take any action to adopt the lease.

Appellant contends that it was entitled to damages under Sec. 63, sub. a(9) of the Bankruptcy Act, regardless of its re-entry upon and retaking of the property for its own use. This section provides,

> "(a) Debts of the bankrupt may be proved and allowed against his estate which are founded upon * * * (9) claims for anticipatory breach of contracts, executory in whole or in part, including unexpired leases of real or personal property: *Provided, however,* That the claim of a landlord for damages for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall in no event be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after bankruptcy, plus an amount equal to the unpaid rent accrued, without acceleration, up to such date".

As can be clearly seen, the proviso in this section allows a landlord damages in an amount not exceeding the rent stipulated in the lease for the year following the date of surrender or reentry, whichever is first. But these damages must flow from and be predicated upon an "injury resulting from the rejection of an unexpired lease of real estate". There must be a rejection of the unexpired lease before damages can be claimed. The words "surrender" and "reentry" relate, not to the *right* to damages, but to the *time* for which damages are computed. A reentry without a rejection, as where there has been a surrender and voluntary acceptance, does not per se give rise to a claim for damages under Sec. 63, sub. a(9).

Appellant earnestly contends that City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, 57 S.Ct. 292, 297, 81 L.Ed. 324, supports his position that a landlord still has a claim for damages even after his voluntary reentry. But the reentry in that case occurred after the rejection of the lease, the court saying, "We think it clear that provability of such a claim is unaffected by any termination of the leasehold subsequent to rejection of the lease." In the present case, the referee found and ruled that there had been a surrender and acceptance by operation of law, as contrasted with and distinguished from appellant's claim that there was a rejection of the leases. The question is, therefore, whether the evidence in the record was sufficient to support the referee's finding and conclusion.

The law of the state where the demised premises are situated determines if there has been a surrender of leased property, either by express agreement or "by operation of law". Floro Realty & Investment Co. v. Steem Electric Corp., 8 Cir., 1942, 128 F.2d 338, 341; Hotz v. Federal Reserve Bank of Kansas City, Mo., 8 Cir., 108 F.2d 216. The law of Missouri, as of most jurisdictions, is clearly established that a surrender and acceptance of a lease terminates the liability of the tenant on all obligations under the lease not then accrued. Crow v. Kaupp, Mo., 50 S.W.2d 995; Blond v. United States Fidelity & Guaranty Co., 336 Mo. 684, 80 S.W.2d 675, 99 A.L.R. 36, also, Blond v. Hoffman, 343 Mo. 247, 121 S.W.2d 137 (second appeal); Producers Packing Co. v. Fisher, 221 Mo.App. 639, 283 S.W. 747; 51 C.J.S., Landlord and Tenant, § 129. This surrender and acceptance may be accomplished by express agreement or by operation of law. This is clearly stated in Von Schleinitz v. North Hotel Co., 323 Mo. 1110, 23 S.W.2d 64, 74, where the court said,

> "While a surrender of the leased premises by the tenant and an acceptance thereof by the landlord must be consummated by mutual

consent and agreement of the parties, yet such may be accomplished by implied, as well as by express, agreement of the parties. If accomplished by implied agreement of the parties, it is said to be done by operation of law, and the intention of the parties is to be implied from the acts and conduct of the respective parties, as disclosed by the attending facts and circumstances."

■ Review of the record convinces that the finding of the referee that there had been a surrender and acceptance by operation of law in this case is fully supported by the evidence. The earlier request for, and later acceptance of the keys without protest by appellant; its placing of "For Rent" signs on the premises before the bankrupt had vacated them; the concern shown in getting the building into shape to attract a new tenant; the numerous and varied attempts through advertising and otherwise to secure a new lessee; the release of Siebens as guarantors on the lease because it was feared they might also become bankrupt and also because it was believed a new tenant might be willing to pay $1100 to $1400 per month rental; the statement in the letter of release that bankrupt intended to surrender possession of the premises; the reentry by appellant and the failure to notify bankrupt that the attempts to secure a new tenant were being made in an effort to mitigate damages, present a course of conduct and circumstances which support the finding of surrender and acceptance by operation of law and conversely militate against a conclusion that there was a rejection attributable to the trustee and reentry pursuant to the rejection. Further, the circumstances enumerated above tend to establish that the reentry was voluntarily made by appellant for its benefit and not the bankrupt's. The referee's finding is sufficiently supported by the evidence.

Appellant argues that it should have been allowed damages under the "good condition" clause of the lease for the removal of the office partition walls erected by Siebens. That these premises are located in a retail store area and the partition walls will necessarily have to be removed in order to secure a new tenant. That other costs of securing a new tenant, such as advertising, et cetera, should also have been allowed.

■ The evidence was uncontradicted that the president of appellant company maintained his office in the building adjacent to the leased premises, watched the changes being made to the outside and lower floor of the building, was always allowed access to the building, and never protested or objected to the work being done. Such knowledge and acquiescence constitute implied consent. Knoepker v. Redel, 116 Mo.App. 62, 92 S.W. 171. Also, his failure to object constituted a waiver of the consent provision respecting repairs and alterations. Botto v. James, Mo., 209 S.W.2d 256.

■ An alteration must be distinguished from a repair. Alteration denotes a substantial change, while repair means to restore to soundness or work done to keep property in good order. Black's Law Dictionary. Appellant's witness testified that these walls were of the permanent, not temporary type. The erection of these walls constituted alterations. Levin v. Hamilton, 240 Mo.App. 764, 218 S.W.2d 131. Being done with the consent of the appellant, these alterations became a part of the realty as provided for by the lease. The "good condition" clause provided that the premises should be surrendered in as good condition as received, ordinary wear and tear excepted. It did not provide they should be returned in the same condition, or like condition. Cawley v. Jean, 218 Mass. 263, 105 N.E. 1007; Marks v. Chapman, 135 Iowa 320, 112 N.W. 817. The walls having become permanent improvements on the premises did not need to be removed at the termination of the lease. Nor could appellant recover other expenses connected with securing a new tenant because the liability of the bankrupt ceased with the surrender and acceptance of the lease. Such surrender and acceptance effective-

ly terminated all liability not then accrued. Crow v. Kaupp, supra; Blond v. United States Fidelity & Guaranty Co., supra; Producers Packing Co. v. Fisher, supra; 51 C.J.S., Landlord and Tenant, § 129.

Appellant also contends that under Section 70, sub. b, 11 U.S.C.A. § 110, sub. b and Section 63, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 103, sub. c, there was a rejection of the lease as of the date the petition for reorganization was filed. Section 70, sub. b provides:

> "Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property: provided, however, That the court may for cause shown extend or reduce such period of time. Any such contract or lease not assumed or rejected within such time, whether or not a trustee has been appointed or has qualified, shall be deemed to be rejected. A trustee shall file, within sixty days after adjudication, a statement under oath showing which, if any, of the contracts of the bankrupt are executory in whole or in part, including unexpired leases of real property, and which, if any, have been rejected by the trustee".

Section 63, sub. c, reads:

> "Notwithstanding any State law to the contrary, the rejection of an executory contract or unexpired lease, as provided in this title, shall constitute a breach of such contract or lease as of the date of the filing of the petition initating a proceeding under this title."

It is true, as appellant contends, this court in Wiemeyer v. Koch, 8 Cir., 1945, 152 F.2d 230, held that where no affirmative action is taken by the reorganization trustee within 60 days to adopt or reject the lease, the statutory presumption of rejection is conclusive.

But if it be conceded that a statutory rejection of the leases in the present case could be inferred on the date the petition for reorganization was filed, March 18, 1949, it is evident that appellant waived the right to claim the benefit of such rejection by accepting monthly payments in accordance with the leases from the reorganization trustee, and later the trustee in bankruptcy during the entire period from March 18, 1949 to August 19, 1950. Under the provisions of the lease, appellant had the option to terminate the lease if lessee became insolvent or bankrupt. It chose not to do so. Forfeiture provisions are inserted in leases for the benefit of the landlord and may be waived. In re Sound, Inc., 7 Cir., 1948, 171 F.2d 253, 254, certiorari denied, Atwell Bldg. Corp. v. Sound, Inc., 336 U.S. 962, 69 S.Ct. 892, 93 L.Ed. 1114. The court in In re Sound, Inc., said:

> "It [the termination clause in the lease] was obviously made for the benefit of the lessor (citing cases) and if the lessor did not want to treat the lease as terminated, it had a right to do so. Since the appellant did not treat the lease as terminated, although it had full knowledge that the grounds for termination had occurred, it will not be heard to say afterwards that the lease had been terminated."

Likewise, the 60 day limitation period of Section 70, sub. b was also inserted in the statute for the benefit of the lessor. 14 Collier on Bankruptcy, section 70.43, p. 1231. We can see no reason why the lessor may not also waive the right accorded him by the terms of this statute. It is undisputed in the record that appellant indicated by its acts and conduct that it considered the lease to be in full force and effect long after the petition for reorganization was filed. The letter it wrote to Siebens discharging them as "guarantors of the leases for the remainder of the term * * *" clearly so indicates. Since appellant did not want to treat the lease as having been terminated either by its terms or by the bankruptcy statute, but chose to acknowledge the continued existence of it, it must be deemed to have waived its

right to have it terminated and to have become bound by its course of conduct.

Finding no reversible error, the order of the District Court confirming and approving the order of the referee in bankruptcy is affirmed.