### In re SOUTHERN MOTEL ASSOCIATES, LTD., Debtor.

**Bankruptcy No. 87–605–BKC–6P1.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Dec. 28, 1987.

Lionel H. Silberman, Orlando, Fla., for debtor.

S.J. Zusmann, Jr., Atlanta, Ga., for East-Group.

## FINDINGS OF FACT AND CONCLUSION OF LAW ON EASTGROUP PROPERTIES' MOTION TO COMPEL COMPLIANCE WITH 11 U.S.C. § 365(d)(4)

GEORGE L. PROCTOR, Bankruptcy Judge.

On September 1, 1987, and again on September 3, 1987, this Court held hearings on the Motion to Compel Compliance with 11 U.S.C. § 365(d)(4) filed by EastGroup Properties ("EastGroup"). The gravaman of the motion was that the debtor, Southern Motel Associates, Ltd. ("SMA"), leased certain parcels of nonresidential real property from Eastgroup, that SMA did not assume or reject the subject leases within the statutory sixty-day period of § 365(d)(4), and that the leases should be deemed rejected as a matter of law. Based upon the record, the evidence, and the arguments of counsel, the Court agrees with the movant and enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. EastGroup is a real estate investment trust which was known as ICM Realty prior to April 1, 1983.

2. SMA is a New Jersey limited partnership which filed this Chapter 11 case on March 16, 1987. The general partner of SMA is 11 Stars Realty, Inc., a Florida corporation.

3. Gainesville PH Properties, Inc. ("Gainesville PH Properties") is a Florida corporation which filed a Chapter 11 case in this Court on March 16, 1987 (Case No. 87–00604–BKC–6P1). The sole stockholder of Gainesville PH Properties is Florten Corporation which is wholly owned by 11 Stars Realty, Inc.

4. Gainesville Land and Holding Corporation ("GLH") is a Florida corporation which was merged with Gainesville PH Properties on October 31, 1978.

5. Pans–Hans Properties, Ltd. ("PHP") is a Georgia corporation which was merged with Gainesville PH Properties on October 31, 1978.

6. Amir Khimani is the principal and chief executive officer of SMA and the principal and chief executive officer of Gainesville PH Properties. Georgia King is Secretary of both 11 Stars Realty, Inc., and Gainesville PH Properties.

7. SMA asserts title to eleven motels situated on real property described in its Schedule of Assets, including five motels hereinafter referred to as the Jacksonville Motel, the Orlando Motel, the Plus Park Motel, the Bell Road Motel, and the Gainesville Motel (collectively the "Five Motels").

8. EastGroup is the owner of the real properties on which are situated the Five Motels.

9. On June 10, 1974, EastGroup leased to Gainesville PH Properties (then GLH) the real property on which the Jacksonville Motel, the Orlando Motel, the Plus Park Motel, and the Bell Road Motel are situated. These leases were twice amended in 1974.

10. On September 20, 1974, EastGroup leased to Gainesville PH Properties (then GLH) the real property in Alachua County, Florida, on which the Gainesville Motel is situated. This lease was amended once in 1974.

11. Each of the five 1974 EastGroup land leases recites that the tenant is the owner of the improvements on the leased land.

12. On April 17, 1979, Gainesville PH Properties assigned its position as lessee under each of the five 1974 EastGroup land leases to SMA and the Assignment was recorded in the appropriate locations.

13. On December 17, 1979, Amir Khimani, Nazir Tharani, and F.K. Amersi, executed an Agreement to acquire the capital stock of Florten Corporation (parent of Gainesville PH Properties) and all of the partnership interests of SMA. Each of these agreements contained a separate rider.

14. On October 1, 1980, Eastgroup consented to a change in the ownership of SMA. The parties executing the Consent and Agreement of October 1, 1980, were EastGroup, the former partners of SMA as seller, and the buyers: Amir Khimani, Nazir Tharani, F.K. Amersi, and Noodin Nanji.

15. Pursuant to the October 1, 1980, Consent and Agreement, the obligations of SMA to EastGroup under the land leases were guaranteed by Amir Khimani, Nazir Tharani, F.K. Amersi, and Noodin Nanji.

16. Under each of the five 1974 EastGroup land leases, fixed rentals are to be paid to EastGroup on the first day of each calendar quarter as follows:

| Jacksonville | $6,375.00 |
| Orlando | 7,656.25 |
| Plus Park | 7,281.25 |
| Bell Road | 7,593.75 |
| Gainesville | 12,500.00 |

In addition to these fixed rental payments, percentage rentals, based upon occupancy, are to be paid on the 30th day after the end of each calendar quarter for the preceding calendar quarter.

17. EastGroup was not listed as a creditor on SMA's Schedule of Liabilities nor on its Statement of Executory Contracts. However, EastGroup was listed as a creditor on Gainesville PH Properties' Schedule of Liabilities and its Statement of Executory Contracts.

18. On April 24, 1987, Gainesville PH Properties filed in its Chapter 11 case "Debtor's Motion for Extension of Time Within Which to Assume Non–Residential Leases of Real Property" in which it requested that the Court extend the § 365(d)(4) sixty-day period to assume or reject the five 1974 EastGroup land leases for an additional sixty days. The Certifi-cate of Service for the Motion does not show EastGroup as a party served with a copy of said Motion.

19. On April 27, 1987, this Court entered an Order in the Gainesville PH Properties Chapter 11 case on the motion for extending the § 365(d)(4) sixty-day period for an additional sixty days. Again, the Certificate of Service for the Order does not show EastGroup as a party served with a copy of said Order.

20. Gainesville PH Properties has since filed motions to assume the subject leases and hearings on these motions have been scheduled. However, no motion to assume or reject or to extend the time in which to assume or reject the five 1974 EastGroup land leases has been filed in the SMA case.

21. On April 3, 1987, EastGroup received the fixed rentals due on April 1, 1987, and soon after received the percentage rentals due on April 30, 1987.

22. On July 3, 1987, EastGroup declined payment of the fixed rentals due on July 1, 1987, and by agreement of counsel for SMA and EastGroup, the rental payments were deposited into an escrow account without prejudice to the rights of either party. The percentage rentals which were due and payable to EastGroup on July 30, 1987, were deposited to this same account.

23. By letter dated June 23, 1987, counsel for EastGroup advised counsel for SMA that EastGroup considered the subject leases to have been rejected because:

(1) SMA had not assumed the subject leases within the sixty-day period of § 365(d)(4); and

(2) SMA had not obtained an extension of the § 365(d)(4) time period within the sixty days.

## ISSUES RAISED

EastGroup has filed its motion under Bankruptcy Code § 365(d)(4), which provides:

(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor

is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

SMA defends this motion by arguing that SMA was not the tenant under the leases at the time this case was commenced, and therefore § 365(d)(4) is inapplicable. Alternatively, SMA argues that, as a matter of equity, compliance with § 365(d)(4) should be excused because the application of § 365(d)(4) would result in a substantial forfeiture, and because East-Group has suffered no monetary loss. However, should § 365(d)(4) be found to apply, SMA then asserts that the doctrines of waiver and estoppel would prevent the forfeiture of the leases.

## CONCLUSIONS OF LAW

1. Since it cannot be seriously contended that this is not a lease of nonresidential real property under § 365(d)(4), the initial issue before the Court is whether SMA is the tenant of EastGroup. On this point, the Court finds that the documentary evidence clearly established that effective April 17, 1979, SMA became the tenant under the five motel land leases. The Court finds further that there has been no assignment of these leases nor a substitution of any party as tenant.

Nevertheless, SMA has asserted that Gainesville PH Properties, not SMA, is the tenant under the leases and has advanced three grounds for this position:

(1) The present owners of SMA and Gainesville PH Properties did not acquire their ownership interest until 1980 and were unaware that Gainesville PH Properties had assigned its tenant position to SMA in 1979;

(2) Payments to EastGroup under the leases have been made by Gainesville PH Properties instead of SMA; and

(3) Various notices have been sent by EastGroup directly to Gainesville PH Properties.

With regard to the first ground, the testimony of Amir Khimani, the chief executive officer of both SMA and Gainesville PH Properties, that he was unaware that SMA was the tenant under the 1979 Assignment is in direct contradiction of numerous documents that he signed. The Agreement signed by Khimani to acquire the partnership interest in SMA states very clearly on the first page that the five subject properties are leased by SMA from EastGroup and is replete with references to such an arrangement throughout the document. Specifically, the Agreement states: (i) that SMA shall maintain the land leases with EastGroup (page 8); (ii) that seller has the right to inspect the properties (page 8); (iii) that none of the land leases with EastGroup shall be in default at the time of closing (page 12); (iv) that the consent of EastGroup as land lessor of the five properties was a condition of sale of the property and that the buyers would individually guarantee the responsibility of SMA under the five leases (page 16); and (v) that any further change in the ownership of SMA would require the consent of EastGroup (page 18).

In addition to those clauses, Schedule D attached to the Agreement lists all the properties in which SMA had an interest. The first five entries are the properties at issue here. The statement immediately following the listing of these properties states "Southern Motel Associates, Ltd., holds tenant position by virtue of an Assignment and Assumption Agreement dated April 17, 1979." This schedule was initialed by Khimani.

In conjunction with the sale of the ownership interests in SMA to Khimani and his associates, a Consent to the change in ownership was executed on October 1, 1980. Both EastGroup, Khimani, and his associates were parties to this document. It too contains numerous recitations with regard to SMA being the tenant under the subject leases, including:

(i) SMA is the tenant under the five leases by virtue of the April 17, 1979, Assignment (pages 1 and 2);

(ii) The subject leases provide for the consent of the landlord in the event of a change of ownership in SMA (page 5); (iii) EastGroup consents to the sale of the ownership interests of SMA (page 5); (iv) EastGroup consents to the making of a mortgage by SMA on the property (page 6); (v) The buyers (Khimani and associates) individually shall guarantee the payment of the rentals under the leases in which SMA is the tenant (page 7); (vi) SMA shall deliver to EastGroup certain statements required under the leases (page 7); and (vii) SMA covenants and agrees that nothing contained in the Consent shall relieve SMA from its liabilities and obligations under the leases.

Khimani, an educated individual holding an accounting degree, did not dispute the contents of the foregoing documents nor that he signed them. Instead, he maintains that he did not read the documents and was therefore unaware that SMA had become the tenant in 1979. However, in view of the overwhelming evidence to the contrary, the Court finds that SMA, through its officers, had knowledge that Gainesville PH Properties had assigned its tenant position under the leases to SMA. The officers' failure to ascertain all of the facts does not exempt the leases from the effect of § 365(d)(4). *See, In re Lovitt,* 757 F.2d 1035 (9th Cir.1985).

As an alternative to that argument, SMA argues that by timely filing a § 365(d)(4) motion in the Gainesville PH Properties case, it has evidenced an intention to assume the motel leases in this case. In support of this position, debtor cites two decisions in which less than formal assumption of leases were approved. *In re Avery Arnold Construction, Inc.,* 11 B.R. 34 (Bkrtcy.S.D.Fla.1981); and *In re Ro-An Food Enterprises, Ltd.,* 41 B.R. 416 (E.D. N.Y.1984).

In *Avery,* the Court approved the oral assumption of a lease based upon the trustee' assertion that the continued use of the property had been consented to by the landlord. In reaching its decision, the Court relied upon an interpretation of § 70(b) of the former Bankruptcy Act found in *Nostromo, Inc. v. Fahrenkrog,* 388 F.2d 82, 85 (5th Cir.1968) wherein the *Nostromo* court stated:

Since the statute does not specify any written notice of assumption, we cannot engraft any formalities into the statute, and we know of no good reason why oral notice of assumption as was made in this case does not suffice.

*Id.* at 85.

However, the Court suggests:

The Trustee's election to assume or reject an executory contract ought to be in unconditional and unambiguous written form filed with this Court and served upon the affected party.

*In re Avery Arnold Construction, Inc.,* 11 B.R. 34, 35 (Bkrtcy.S.D.Fla.1981).

Like *Avery,* the *Ro-An* court was compelled to reach a similar conclusion. At issue in that case was the validity of an assignment of a lease to a third party. That issue was in turn contingent upon a finding of whether the lease had been properly assumed under § 365(d)(1). The trustee maintained that the lease had been properly assumed and that the assignment itself constituted an informal assumption of the lease. The District Court agreed and held that the Trustee could assume the unexpired lease by action less formal than the Rule 9014 provision for a motion for Court approval. 41 B.R. at 418.

■ The Court is aware of other decisions which support the informal assumption doctrine but declines to follow their reasoning. Rather, this Court is guided by the conclusion reached in *Matter of J. Woodson Hays, Inc.,* 69 B.R. 303, 307 (Bkrtcy.M.D.Fla.1987), where the Court found that before a debtor can obtain approval of an assumption of a nonresidential lease of real property under § 365, it must first file a motion and seek authorization for assumption.

[T]his Court is satisfied that to dispense with the requirement to file a written motion as a condition precedent for assuming an unexpired lease would be

clearly contrary to the clear intent of the 1984 Amendment of § 365 and would not carry out the stated Congressional intent and certainly would not comply with the requirements of B.R. 6006.

*Id.,* at 308.

While this Court would like to go as far as to require the filing of a formal motion for assumption in all cases, the Court is aware that at times the doctrines of waiver and estoppel should relieve the parties of formal compliance with Bankruptcy Rules 6006 and 9014. *See, Ranch House of Orange–Brevard, Inc. v. Gluckstern,* 773 F.2d 1166 (11th Cir.1985); *Larkins v. Sills,* 377 F.2d 1 (5th Cir.1967).

For instance, in *Ten–Six Olive v. Curby,* 208 F.2d 117 (8th Cir.1953), it was held that a landlord may waive a right to terminate an unexpired lease, not timely assumed or rejected, by acknowledging the continued existence of the lease or by accepting payment of rent after a lease had been otherwise rejected. Said the court:

We can see no reason why the lessor may not also waive the right accorded him by the terms of this statute. It is undisputed in the record that appellant indicated by its acts and conduct that it considered the lease to be in full force and effect long after the petition for reorganization was filed.... Since appellant did not want to treat the lease as having been terminated either by its terms or by the bankruptcy statute, but chose to acknowledge the continued existence of it, it must be deemed to have waived its right to have it terminated and to have become bound by its course of conduct.

208 F.2d at 123.

Similarly, in *In re T.F.P. Resources, Inc.,* 56 B.R. 112 (Bkrtcy.S.D.N.Y.1985), the court found:

[U]pon a breach courts will deem a forfeiture provision waived when by his conduct a landlord evidences an "intent to treat the lease as continuing rather than as terminated...." This intent to waive the benefits of a forfeiture clause is most often inferred from the acceptance of rent which accrues after the lessee's breach.... Similarly, a lessor's election to treat a lease as not rejected is to be inferred from accepting rental payments after it was deemed rejected pursuant to § 365(d)(4). [Citations omitted.]

56 B.R. at 116.

In *Ranch House of Orange–Brevard, Inc. v. Gluckstern,* 78 B.R. 323 (Bkrtcy.M. D.Fla.1987), this Court was confronted with a similar issue. There, we found that the continued acceptance of rent following rejection of a lease together with the tacit approval of an assignment of that lease to a third party was sufficient to establish a waiver of the lessor's rights under § 365(d)(4).

■ These cases lead to the inescapable conclusion that the lessor may waive its right to have a lease rejected if, through its conduct, it evidences an intention to have the lease treated as continuing. However, having said that, the Court reiterates that a waiver of such rights must be clearly established by the evidence.

■ In this case, the debtor argues that the continued acceptance of rent from Gainesville PH Properties, rather than from this debtor, constitutes a waiver of EastGroup's rights.[1] The Court finds, however, that the evidence is insufficient to support such a conclusion.

First, acceptance of rent which SMA was mandated to pay under § 365(d)(3) does not, standing alone, constitute a waiver of the lessor's right to have a lease deemed rejected. Indeed, § 365(d)(3) specifically provides:

The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any expired lease of nonresidential real property, until such lease is assumed or rejected.... Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

Compliance with this section is mandatory under the statute. The acceptance of

---

1. A similar argument was raised in regards to the determination of who was the tenant under the leases and was found to have some evidentiary value. However, the greater weight of the evidence supports the conclusion that SMA was the true tenant under the five leases.

rental payments pursuant to the contract should not, therefore, be construed as a relinquishment of a lessor's rights.

The fact that an escrow account was established for the deposit of the quarterly rental payments is also influential in this Court's decision, for the creation of such an account so soon after the petition was filed clearly evidences an intention by the lessor to not have the acceptance of rent construed against it.

Likewise, the fact that most of the rental payments due on the property were paid by Gainesville PH Properties is not to be considered as a waiver of the lessor's rights, especially in light of the testimony that some of the payments were made by SMA and another party. Gainesville PH Properties was simply the operator of the motels and the Court can find nothing unusual in its having made the quarterly rental payments. The fact that EastGroup often sent delinquency notices to Gainesville PH Properties when those payments were not overdue is also not determinative of this issue and of whether a change of tenant had been effectuated under the leases. The Court concludes that EastGroup has not waived, nor can it be estopped, from asserting its right to have the lease terminated because it accepted rent payments from the motel operator.

■ The next issue raised in this proceeding is whether the Court may excuse compliance with § 365(d)(4) when the lessor has in fact suffered no monetary loss. The Court can find no language within § 365(d)(4) which gives the Court discretion to excuse compliance on this basis. It would be improper for this Court to read such an exception into the statute in the name of equity. But even if there were such an exception, this Court could not, based on the evidence, conclude that East-Group has not suffered a monetary loss.

■ SMA has also asked the Court to excuse compliance with § 365(d)(4) because the strict application will result in the forfeiture of substantial assets. SMA's position is based upon the oft stated notion that equity abhors a forfeiture. Again, the Court must reject the debtor's argument.

Each of the subject leases is a land lease and each recites that title to the improvements is in the tenant. Each of the leases further states that upon the end of the contractual lease term or upon earlier termination, the tenant shall surrender the improvements to the landlord. Such an arrangement is not uncommon and it is generally understood that when a lease is terminated either by expiration or upon default, the improvements will become property of the lessor.

The Court finds that the possibility of loss of the improvements was within the contemplation of the parties when the leases were originally signed. SMA would lose the improvements if the leases were terminated for non-bankruptcy reasons, or if the Court did not authorize assumption of the leases. The Court is also guided by the principle that the law permits one to make a contract which may result in forfeiture. When it is clear from the terms of the contract that the parties have so agreed, the Court will enforce the forfeiture. 12 Am.Jr. § 435. The Court is unwilling to excuse compliance with § 365(d)(4) simply because it will result in a forfeiture.

Again, it is noted that § 365(d)(4) does not contain exception to its applicability nor does it concern itself with forfeiture. Congress simply fixes a mandatory time within which certain action must be taken. A statute such as this which is clear and unambiguous should be applied as written. Any attempt to modify it under the guise of equity would be inappropriate. *See, In the Matter of Coastal Industries, Inc.,* 58 B.R. 48, 50 (D.N.J.1986).

Here, the debtor took no action within the statutory sixty-day period. The lessor is, therefore, entitled to immediate possession of the property pursuant to § 365(d)(4). To allow a retroactive extension of time in which to move for assumption would defeat congressional intent and would soften the harsh edges of the law. The Court is unwilling to so act.

## CONCLUSION

The Court concludes:

1. SMA is the tenant under the subject leases;

2. SMA has not complied with the statutory requirements of § 365(d)(4);

3. No basis in equity exists to avoid the applicability of § 365(d)(4).

4. EastGroup has taken no action which would constitute a waiver of its § 365(d)(4) rights.

5. EastGroup has taken no action which would estop it from asserting its § 365(d)(4) rights.

Because SMA did not comply with the provisions of § 365(d)(4), the Court finds that the subject leases terminated as a matter of law sixty days after the order for relief in this case. *In re Hurst Lincoln–Mercury, Inc.,* 70 B.R. 815 (Bkrptcy.Ohio 1987). No court order is necessary for the rejection to occur; the rejection occurs automatically and the rejection terminated the leases.

EastGroup is entitled to the relief sought in its motion and the Court will separately enter its Order Granting EastGroup's Motion to Compel Compliance with 11 U.S.C. § 365(d)(4).