BLANKE BRO. REALTY COMPANY v. AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

In Banc, February 2, 1923.

1. **LEASE: Forfeiture and Reentry: Surrender of Rents.** If the lessor of demised premises, confronted with the lessee's default to erect designated buildings thereon, elects to exercise his contract right to forfeit and terminate the lease before such buildings are required to be completed, he thereby deprives himself of any right to rent accruing after his severance of the relation and a re-entry

upon the property, unless there is an agreement to the contrary in the lease contract. And if by such course he deprives himself of the rents, he also deprives himself of the benefits accruing to him from the other provisions of the lease.

2. ———: Agreement to Construct Builing: Failure and Forfeiture: Liability of Surety. The owner of a city lot leased it for ninety-nine years for an annual rental of $16,000, payable quarterly in advance, the lessee to pay all general and special taxes, and within five years to erect an entirely new building thereon adapted to commercial, hotel and office purposes and to cost not less than $200,000, and to execute a surety bond conditioned that said lessee would erect, complete and pay for the building within the time specified, and the defendant surety company executed the bond, which provided, among other things, that the lessee, within the five year period, would build and pay for the building "according to the terms of that portion of the lease referring to the construction of said building, which said lease is herewith referred to and made a part hereof as though set out in full herein," and the lease provided that any failure to pay the rent when the same shall become due and payable, or to pay said taxes or any part thereof, "shall, at the option of the lessor, make and create a forfeiture of this lease." Neither the lease nor the bond contained a provision fixing the liability of the surety in the event of the abandonment of the lease by the lessee and of re-entry by the lessor. The lessee paid the rent, quarterly, for nine months, then defaulted; it also failed to pay the taxes, and to erect the building or to take any steps towards its erection; and nearly three years before the end of the five-year period within which the building was to be completed the lessor forfeited the lease, notified the surety of the forfeiture, and entered into possession. Held, that the termination of the lease and re-entry by the lessor deprived the lessor of any right to rent thereafter accruing, and having deprived himself of a right to the rents he thereby deprived himself of the benefits accruing to him from the other provisions of the lease contract, and although the lessor was damaged by the failure of the lessee to construct the building, in a sum largely in excess of the indemnity provided for in the bond, he cannot recover on said bond, the lessor by terminating the lease having put it out of the power of the lessee to construct the building, although at the time of the forfeiture nearly three years remained in which by the terms of the lease the lessee was required to complete it, and there being no provision in the bond fixing liability upon the surety in the event of the abandonment of the lease by the lessee within the period fixed for the construction of the building.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene,* Judge.

REVERSED.

*J. D. Johnson* for appellant.

(1) The 99-year lease in suit was duly forfeited and terminated October 14, 1914. Baxter v. Heimann, 134 Mo. App. 264; Knight v. Orchard, 92 Mo. App. 466; Land Co. v. Manning, 98 Mo. App. 248; Realty Co. v. Kelly, 278 Mo. 450. (2) It conclusively appears from the evidence that plaintiff failed to keep and perform the covenants and conditions of the contract of lease and bond required to be kept and performed by it. Therefore plaintiff was not entitled to maintain said action against either of the defendants for the alleged breach thereof. Kreitz v. Eglehoff, 231 Mo. 702; Maratta v. Dry Goods Co., 190 Mo. 425; Iola Cement Co. v. Ullman, 159 Mo. App. 235; McCrary v. Thompson, 123 Mo. App. 596; Phillips v. Todd, 180 S. W. 1041. (3) One of the conclusive inferences to be drawn from the evidence in the case is that by agreement between them, the lessee abandoned and the lessor resumed possession of the demised premises under said 99-year lease; that said lease was thereby terminated long before the 15th day of June, 1917, and defendants were released from liability on the bond in suit. Mullaney v. McReynolds, 170 Mo. App. 414; Mining Co. v. Hodge, 185 Mo. App. 147; Herboth v. Radiator Co., 145 Mo. App. 484; American Bonding Co. v. Investment Co., 150 Fed. 17; People v. Title Guaranty Co., 237 U. S. 382, 57 L. Ed. 561; Sharon v. Fidelity Co., 172 Mo. App. 313.

*Geo. B. Webster* for respondent.

(1) Upon the undisputed facts in this case the respondent, as plaintiff below, is entitled to recover. Sharon

v. American Fidelity Co., 172 Mo. App. 309. By the terms of the bond the lease was made a part of the bond so that the appellant was charged with notice of the contents of both documents. It thus knew that a forfeiture might occur before the expiration of the time for building, and it contracted by its bond in the light of that contingency. It knew that in order to perform the covenant for building within the required time its principal must keep the lease alive and to do that must pay the rent and taxes. The proximate cause of the forfeiture of the lease was the default of the appellant's principal, and not the wrongful act of the respondent. The election of the respondent to declare a forfeiture of the lease for non-payment of the rent and taxes was not a breach or repudiation of the lease, but an act in enforcement of its provisions. O'Brien v. Illinois Surety Co., 203 Fed. 436. (2) The lease and bond are one instrument and the taking of possession by the lessor for the nonpayment of rent and taxes was within the contemplation of the parties; it was an act of enforcement of the provisions of the lease and consequently the lessor is entitled to recover damages from the surety for failure to erect the building, because the entire lease was a part of the bond and the surety contracted in the light of the contingency of default in the payment of rent and taxes. (a) If the lease is not a part of the bond, then the surety must perform regardless of the lease. Sharon v. American Fidelity Co., 172 Mo. App. 309; Rock v. Monarch Building Co., 87 Ohio St. 244; O'Brien v. Illinois Surety Co., 203 Fed. 436, 440; Illinois Surety Co. v. O'Brien, 223 Fed. 933, 940; Anvil Mining Co. v. Humble, 153 U. S. 540, 551; Hayes v. City of Nashville, 80 Fed. 641, 645; American Bonding Co. v. Pueblo Inv. Co., 150 Fed. 17, 22; Halpern v. Manhattan Avenue Theatre Co., 173 App. Div. N. Y. 610; Roehm v. Horst, 178 U. S. 1.

DAVID E. BLAIR, J.—The action is on an indemnifying bond. From a judgment in favor of respondent

(plaintiff below), in the sum of $50,000, defendant has appealed.

Respondent was the owner of a certain described lot of ground in block 132 in the city of St. Louis, and on May 16, 1912, leased the same for a period of ninety-nine years to the Marsix Realty & Construction Company. Among other provisions said lease provided for the payment to the Blanke Company by the Marsix Company of an annual rental in the sum of $16,000, payable quarterly in advance, and that the Marsix Company should pay all general and special taxes. It also provided that the Marsix Company on or before June 15, 1917, should erect upon the leased premises an entirely new, modern building of fire-proof construction, adapted to business, commercial, office, hotel or realty purposes, costing not less than $200,000. Said lease also provided that the Marsix Company should make, execute and deliver to the Blanke Company a surety bond in the sum of $50,000, conditioned that the Marsix Company "shall erect, construct, complete and pay for the new building herein provided for within the time hereinbefore limited."

On May 16, 1912, the Marsix Company executed and delivered to the Blanke Company said bond in the sum of $50,000, signed by itself as principal, and by defendant, American Surety Company of New York, as surety. The condition of said bond, eliminating portions thereof not now important, is as follows:

"Whereas, the obligee has agreed to lease to the said Marsix Realty & Construction Company, . . . the following parcel or lot of ground situated in city block number one hundred and thirty-two (132) in the city of St. Louis, Missouri [describing same]; and

"Whereas, the principal herein in accordance with the terms of said lease agrees that on or before the 15th day of June, 1917, the lessee shall have . . . constructed, built and completed on the demised premises . . . and paid for in full an entirely new modern

building . . . at a cost to said lessee of not less than two hundred thousand dollars ($200,000), in accordance with the terms of that portion of the lease referring to the construction of said building, which said lease is herewith referred to and made a part hereof as though set out in full herein.

"Now, therefore, if the said principal shall construct, build and complete . . . on the above described and demised premises an entirely new modern building . . . at a cost to said lessee of not less than two hundred thousand dollars ($200,000), within the time limit as in said lease specified, . . . then this obligation to be void, otherwise to be and remain in full force and effect."

The lease contained the following provisions:

"Section 15. It is further agreed and covenanted by and between the lessor and the lessee that any and every failure: First, to pay the rent above reserved, or any part thereof, when the same shall become due and payable, whether demand shall have been made therefor or not; or Second, to pay the said taxes, rates, charges and assessments, or any part thereof, . . . shall, at the option of the lessor, make and create a forfeiture of this lease, and a termination of the time for which said premises are hereby let, and thereupon all the estate hereby conveyed shall be absolutely at an end, if so determined, . . . and upon such forfeiture of this lease and termination of the time for which said premises are hereby let, all the improvements then on said leased premises shall be and remain the absolute property of the lessor, wholly free and discharged of and from all rights, claims and demands of the lessee and any and all persons claiming by, through or under the lessee."

After the execution and delivery of said lease and said indemnifying bond the Marsix Company entered into possession of the premises, and paid the rent due under the lease until it made default in such payments

as to the quarterly installment of $4000 due on June 15, 1914, and also failed to pay the taxes for 1912 and 1913. On July 30, 1914, the Blanke Company served notice of forfeiture of said lease upon the Marsix Company. At the time the lease was forfeited the Marsix Company had taken no steps toward the erection of the building provided for in the lease. The forfeiture and re-entry of the premises by the Blanke Company was fully consummated on October 10, 1914, or more than two years and eight months prior to June 15, 1917, the date fixed in the lease for the completion of the said building.

There was evidence tending to show that the Blanke Company had been damaged by the failure of the Marsix Company to construct said building in a sum largely in excess of the indemnity provided for in said bond. Trial before a jury resulted in a verdict for the Blanke Company against both defendants in the sum of $50,000, the same being the full amount of indemnity provided for in the bond. The Marsix Company made default, and the appeal was taken by the surety company. The evidence was documentary, except the proof going to the damages and payment of rent.

The first contention made by appellant is that the Blanke Company failed to perform its part of the contract of lease and bond; that by agreement between them the lessee abandoned and the lessor resumed possession of the leased premises and said lease terminated long before June 15, 1917. There is no direct evidence of any agreement between the two companies that the Marsix Company should abandon the premises and the Blanke Company resume possession thereof. The lease required the Marsix Company to pay the rent quarterly and also the taxes. It failed to do this and, in accordance with the provisions of the lease, the Blanke Company forfeited the lease and resumed possession. There is no evidence whatever that the Blanke Company connived at or agreed to the nonpayment of rent or taxes. The suit was filed after June 15, 1917.

The question is whether this forfeiture of the lease and resumption of the possession of the leased premises two years and eight months before the Marsix Company had agreed to complete the building released appellant from liability as surety on said bond. The condition of the bond in substance was that if the Marsix Company should construct on the premises a new building costing $200,000 and adapted to the specified uses, the obligation was to be void, otherwise to be in full force and effect. The record is entirely silent as to why the Marsix Company failed to perform its contract. Faced with the alternative of losing the accruing rent or forfeiting the lease and resuming possession, the Blanke Company chose the latter course. The forfeiture terminated all rights of the Marsix Company in the leased premises, and put it out of its power to construct the building if it had been able and willing to do so. Does this fact defeat recovery on the bond by the Blanke Company?

Both appellant and respondent rely on the case of Sharon v. American Fidelity Company, 172 Mo. App. 309. We will not undertake to set out the facts in the case. They are quite similar to the facts in the case before us, except that the surety bond in the Sharon Case had a provision in it not found in this case. We quote from the opinion of ELLISON, J., as follows:

"But the law seems the same (at least we will concede it is the same) even though the lessee is at fault and the landlord may rightfully enter and declare a forfeiture. Rent is a compensation for the use and occupation of the premises and, in the absence of a contrary provision, when the latter ceases, rent does also. So, if the landlord, confronted with the lessee's default and knowing his remedies, elects to exercise that which destroys the relation, terminates the tenancy and avoids the lease, he deprives himself of any right to rent accruing after his severance of the relation and taking back the property. [Trustees v. Miller, 3 Ohio, 261; Grommes v. St. Paul Trust Co., 147 Ill. 634; Campbell v.

Nixon, 2 Ind. App. 463; King v. Davies, 2 Kan. App. 634; Kramer v. Amberg, 53 Hun, 427; Home Life Ins. Co. v. Sherman, supra.]

"Notwithstanding these concessions of the state of the law to defendant, we are of the opinion, after much consideration, that the terms of defendant's contract do not permit it to invoke that law. The obligation defendant assumed with plaintiff is more than that usually set out in simply a surety bond. Defendant's relation to plaintiff is that of a surety with other matters of contract that show the nature and extent of the suretyship. For after the bond and its conditions are set out, these further stipulations appear, viz.: 'This bond is executed by the American Fidelity Company, hereinafter called the company, as surety upon the express condition that if at any time the above bounded George H. Kersting shall, in any manner, fail, neglect or refuse to make said improvements or to pay for the said improvements and if he shall fail, neglect or refuse to pay for said improvements, or any part thereof, *or shall abandon said lease and it shall appear that he does not intend to or will carry out the agreements and covenants of said lease in any matter covered by this bond, the obligee shall immediately so notify the company by registered letter prepaid addressed to the company at its principal office in the city of Montpelier, State of Vermont, and the company shall have the right, at its option, to assume said lease and carry out and perform the covenants thereof; and if it so elects, it shall be subrogated to all of the rights of the said George H. Kersting, the principal herein.*'

"We have italicized that part of these additional stipulations which we think directly apply to what occurred between the parties concerned. As we have said, Kersting, the lessee, after a time, failed to pay rent and plaintiff entered and forfeited the lease, Kersting acquiescing and quitting the premises. No improvements were made. We have already stated that plaintiff

297 Mo.—4

promptly notified defendant. The letter on this subject, of June 2, 1911, contained the following: 'Your bond provides for your right of subrogation, etc., and in the event he turns possession to me at the end of the notice herein contained or abandon the premises for any reason your right to actual possession and control of the premises and property above described will mature and you have my consent and all my rights thereunder pertaining to the bond until the expiration of the term which your bond covers. My opinion is you should immediately make a thorough investigation as to the condition of affairs on said property for your own protection.'

"In the circumstances, we think Kersting's actions constituted an abandonment of the lease. He defaulted in the rent and compelled plaintiff, for his own protection, to enter, he, Kersting, getting out without protest or an offer to make the improvements. Though this was six months *before* the time for making the improvements had expired, it was a contingency clearly shown to have been within the contemplation of the parties and was included in defendant's liability. Why should the provisions of the bond read that defendant should be notified if the lessee shall abandon the lease and it appears that he does not intend to make the improvements? If defendant was not concerned and in no event had any interest in the matter until the time for making the improvements had expired, notice would not have been necessary. At that time, if no improvements were then made, any question of abandonment, or intention, would have been useless. It seems plain defendant contemplated that the lessee might default on the improvements before the expiration of the time from the fact that it required notice so that it could 'assume said lease and carry out and perform the covenants thereof.' That is to say, itself make the improvements within the time. The surety bond showing on its face that the parties contemplated defendant's liability might, in certain contingencies, become consummate before the

period limited for the improvements had expired, and the provisions thereof relating to such contingencies having been complied with by plaintiff, we regard defendant's liability was made out at the trial, and that the judgment of the learned trial court was correct. It is therefore affirmed. All concur.''

Abandonment of the leased premises prior to the date fixed for completion of the building in Sharon's Case ''was a contingency clearly shown to have been within the contemplation of the parties.'' Such contingency was covered by the bond.

In the bond before us there is no provision fixing liability of the surety in the event of the abandonment of the lease by the Marsix Company and re-entry by the lessor. Said bond recites the agreement of the Marsix Company to construct the building *"in accordance with the terms of that portion of the lease referring to the construction of said building,* which lease is herewith referred to and made a part hereof as though set out in full herein,'' and the condition for the avoidance of liability on the bond is that the Marsix Company shall construct said building ''as in said lease specified.'' Clearly both recitals refer solely to the construction of a building as described in section 6 of the lease, and do not refer at all to the payment of rent and taxes. The reference to the lease, making it a part of the bond, seems to have been done for the sole purpose of making the specifications of section 6 a part of the conditions of the bond. It is true appellant was thus notified of all the provisions of the lease, but its contract was only for the fulfillment of the provisions of section 6 of said lease on or before June 15, 1917.

As said in the Sharon Case ''if the landlord, confronted with the lessee's default and knowing his remedies, elects to exercise that which destroys the relation, terminates the tenancy and avoids the lease, he deprives himself of any right to rent accruing after his severance of the relation and taking back the property.'' If he

deprives himself of the rent, he also deprives himself of the benefits accruing to him from the other provisions of the lease.

In Mullaney v. McReynolds, 170 Mo. App. 406, l. c. 414, it is held that failure to pay the rent reserved and abandonment of the leased premises by the lessee gives the lessor the right to re-enter the premises and, when he does forfeit the lease and re-enter, the lease is terminated.

In G. M. Mining Company v. Hodge, 185 Mo. App. 138, at page 147, it was said: "Any act amounting to an agreement on the part of the tenant to abandon and on the part of the landlord to resume possession of the demised premises amounts to a surrender by operation of law."

In American Bonding Company v. Pueblo Inv. Co., 150 Fed. 17, l. c. 21, it was said: "The surrender of leased premises by the tenants during the term of the lease and the acceptance of the property by the landlord, without a notice that the latter takes it and will hold and use it during the remainder of the term for the use and benefit of the tenants exclusively, closes the term of the lease, and destroys all rights conditioned upon its subsequent continuance." In that case the bond guaranteed the performance of *all* of the conditions of the lease. The lessee had defaulted prior to the surrender, and for such default the surety was held liable. As to liabilities not accrued prior to the surrender, the surety was not held.

In People of Porto Rico v. Title Guaranty Company, 227 U. S. 382, the principal in the bond had contracted to build an electric railway and power plant in specified places in the island of Porto Rico. Part of the work was to be done in one year, part in two and the entire work was to be completed and in operation at the end of three years. The principal failed to do the work specified during the first year, and an extension was granted, and after such extension expired the grant was revoked and

the ordinance repealed and a forfeiture was declared. The United States Circuit Court held that the bond was only security for the result at the end of three years, and the United States Supreme Court reached the same conclusion. There was no provision in the ordinance for forfeiture as to progress made in one and two years, but such forfeiture put it out of the power of the principal fully to perform the contract in three years. Mr. Justice HOLMES concluded as follows:

"If our construction of the bond is right it does not need much argument to show that the plaintiff is not entitled to recover, seeing that within three years it took the franchise back. It was said at the bar, though not admitted, that the principal had given up work. But there had been no repudiation of the contract, and the plaintiff could not accelerate the forfeiture simply on the ground that it was likely to come about. If, within the time allowed for performance the plaintiff made performance impossible, it is unimaginable that any civilized system of law would allow it to recover upon the bond for a failure to perform. [2 Bl. Comm. 340, 341; United States v. Arrendondo, 6 Pet. 691, 745, 746.]"

As soon as the Blanke Company forfeited the lease, as it had the right to do, it put it out of the power of the Marsix Company to construct the building, although at the time notice of forfeiture was served, nearly three years, and, when the forfeiture was consummated, over two years and eight months of the required time, remained. It is no answer to say that the Marsix Company would not have erected the building within the required time. The point is that plaintiff elected to pursue a remedy which put it out of the *power* of the Marsix Company to comply with the terms of the lease, whether it was willing to perform or not. It elected to forfeit the lease. There was no provision in the bond fixing the liability of the surety company in the event of abandonment of its lease by the Marsix Company short of the date fixed for the construction of the building. The

surety, being liable only for failure of the principal to complete the building on or before June 15, 1917, the Blanke Company thereby elected to release the surety company. If said company desired to hold the surety, it should have required a bond covering the contingency. Courts cannot write provisions into contracts not written by the parties to them. They can only enforce agreements as written.

The foregoing considerations fully dispose of the case. Since respondent has failed to show that appellant is liable under the provisions of the bond for the failure of the Marsix Company to construct the building, other reasons urged by appellant for reversal of the judgment need not be considered and it results that the judgment should be and it is reversed. All concur except *White, J., dubitante.*