Leon SIMPSON (Plaintiff), Appellant,

v.

AMERICAN AUTOMOBILE INSURANCE COMPANY, a Corporation (Defendant), Respondent,

Travelers Indemnity Company, a Corporation (Defendant), Appellant,

and

Grocers Terminal Warehouse, Inc., a Corporation (Defendant), Appellant.

No. 30176.

St. Louis Court of Appeals. Missouri.

Sept. 15, 1959.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 16, 1959.

Arnot L. Sheppard, Gentry, Bryant & Sheppard, St. Louis, for appellant Simpson.

John F. Evans, Evans & Dixon, St. Louis, for appellants Travelers Indemnity Co. and Grocers Terminal Warehouse, Inc.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondent.

RUDDY, Judge.

This action was instituted by Leon Simpson under the Declaratory Judgments Act, Section 527.010 et seq. RSMo 1949, V.A. M.S., for a declaration and determination of the respective rights, liabilities, duties and legal relations among plaintiff and the following defendants: American Automobile Insurance Company, Travelers Indemnity Company and Grocers Terminal Warehouse, Inc. (The above named defendants will be referred to hereinafter as American, Travelers and Grocers.) This action

grew out of sums of money and costs paid in settlement of a case brought by William Ogle against defendant, Grocers. In the instant action the trial court rendered findings and judgment against Simpson, Travelers and Grocers and they appeal.

The controversy which gave rise to this declaratory judgment action had its beginning when William Ogle, an employee of Aero Drayage Company, hereinafter referred to as Aero, sustained an injury while loading a truck owned by Aero and operated by Ogle.

As stated, Ogle was in the employ of Aero and in the course of his employment on April 28, 1955, he drove a truck owned by Aero to Warehouse No. 4 of Grocers at Second and Convent Streets in the City of St. Louis for the purpose of obtaining a load of merchandise to be delivered elsewhere. Ogle backed the truck up to the loading dock where three employees of Grocers, one of whom was plaintiff, Leon Simpson, brought the merchandise from the warehouse to the truck and Ogle placed the merchandise in the truck. All of the merchandise had been loaded, except one carton, and the truck had been completely filled, except for a small space at the rear of the truck. Ogle in an attempt to load the last carton in the space left in the truck, stood on the truck near or upon the center ridge pole and the side rail and when in that position he fell to the ground and was injured.

On August 12, 1955, a suit was filed by Ogle against Grocers claiming damages in the sum of $75,000 for personal injuries sustained. In the petition filed in said suit it was alleged by Ogle that the defendant Grocers, "its agents, servants, and employees negligently and carelessly pushed, shoved, and thrust a box of merchandise into the body of the said truck and against the side of said truck striking the person of the plaintiff (Ogle) and shaking and jostling the said truck causing plaintiff to fall to the ground" and be injured. No place in his petition does Ogle name or identify the employee or employees who performed the alleged negligent act. It is admitted that Leon Simpson, plaintiff in the instant action, was an employee of Grocers and was present on the platform helping in the loading of said truck on the occasion in question.

At the time of the accident and injury to Ogle there was in force a policy of insurance issued by Travelers to Grocers known as a comprehensive general liability policy of insurance. The terms of this policy are immaterial to a disposition of this appeal and for this reason we omit them, except to point to a provision in the policy which provided that in the event any payment was made under the terms of the policy Travelers should be subrogated to all of Grocers' rights of recovery therefor against any person or organization.

There was also in force at the time of the accident and injury to Ogle a policy of insurance issued by American referred to by the parties as a public liability insurance policy and described in the policy as a "Combination Automobile Policy." In the Declarations under "Item 1. Name and Address of Insured" appears the following: "Arthur C. Reichardt, Flora Reichardt, Shirley Reichardt Doing Business as Aero Drayage Co. and Grocers Warehouse, Inc. * * *" The address given is "3401 Chouteau Ave." and the occupation is described as "Warehouse." The coverage provisions of American's policy material to a disposition of this appeal are as follows:

"Insuring Agreements

"1. Coverages.

"Coverage A.—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

\* \* \* \* \* \*

"II. Defense, Settlement, Supplementary Payments. As respects the insurance afforded by the other terms of this policy under coverages A and C the Company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

\* \* \* \* \* \*

"III. Definition of Insured. With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply:

\* \* \* \* \* \*

"(b) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer.

"IV. Automobile Defined \* \* \*

"(a) Automobile. Except where stated to the contrary, the word 'automobile' means:

\* \* \* \* \* \*

"(e) Purpose of Use. \* \* \* (3) Use of the automobile for the purposes stated includes the loading and unloading thereof."

The exclusion provisions of said policy material to a disposition of this appeal are as follows:

"Exclusions

"This policy does not apply:

\* \* \* \* \* \*

"(c) under coverages A and B, to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law;

\* \* \* \* \* \*

"(e) under coverage A, to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law."

In addition to filing suit against Grocers, Ogle filed a claim for Workmen's Compensation against his employer, Aero. American was asked by Grocers to assume the defense of Ogle's action against it and to assume the responsibility for any judgment that might be rendered against it. American refused to assume the defense of Grocers in Ogle's action and disclaimed any responsibility to Grocers under its policy of insurance. At the request of Grocers, Travelers assumed the defense of Grocers in the suit brought by Ogle.

Thereafter Ogle's suit was compromised and settled and a stipulation for dismissal of Ogle's action was signed by the attorneys for plaintiff and defendant Grocers and filed in court. The action was dismissed with prejudice to the rights of plaintiff and at the costs of defendant. Travelers paid Ogle $5,390 on behalf of Grocers in settlement of said suit and in addition paid $325 to its attorneys and $28.65 court costs. In addition, Aero paid Ogle $1,000 in settlement of his compensation claim.

Following the aforesaid settlement of Ogle's suit by Travelers in behalf of Grocers, a suit was filed by Grocers against Leon Simpson seeking to recover the sum of $5,743.65, the amount of money paid out in the settlement of Ogle's suit. This suit was filed by Travelers, through its attorneys. The attorneys for Travelers had an understanding with the defendant, Leon Simpson, that they would retain counsel to defend him in the mentioned suit by Grocers. In this suit by Grocers it was alleged that defendant, Leon Simpson, "negligently and carelessly pushed, shoved and thrust a box of merchandise against William J. Ogle, directly causing him to fall from the side of said truck * * *." Grocers further alleged the filing of Ogle's suit against Grocers and the settlement thereof and prayed for judgment against Leon Simpson in the sum of $5,743.-65, the amount paid out by Travelers in settlement of Ogle's suit. American was called upon to assume the defense of the aforesaid suit against Leon Simpson and to pay whatever judgment, if any, that should be rendered against Leon Simpson. American refused to accept the defense of said suit or to pay any judgment rendered against Leon Simpson.

Thereafter, Leon Simpson filed the declaratory judgment action that is the subject of this appeal. In the petition in the instant action, Leon Simpson set out all of the facts and events we have related aforesaid and in addition alleged that American, by reason of its contract of insurance issued to Grocers, plaintiff, Leon Simpson, and Grocers became additional insureds, "wherefore American became legally obligated to defend the case of Ogle v. Grocers Terminal Warehouse, Inc., filed in the Circuit Court of the City of St. Louis * * *; and is perforce now legally obligated to defend plaintiff against the suit now pending * * wherein Grocers is plaintiff and plaintiff herein is there defendant; and to pay any judgment which may be rendered against plaintiff in that action."

It is further alleged in said petition that American denies any such legal responsibility rests upon it, "and says that it is not bound under its policy of insurance to Aero," to assume any such responsibility and was not bound to assume any responsibility in connection with the case of Ogle v. Grocers.

It is further alleged in said petition as follows:

"Travelers denies that it ever assumed any responsibility in connection with the Ogle injury; denies any responsibility to plaintiff herein with respect to the pending action against him; but claims that American's policy of insurance created upon it responsibility for the loss sustained by Grocers in connection with the claim and suit of Ogle against Grocers, and the payment it made in settlement of that action; that by reason of its contract of subrogation with Grocers, American is liable to indemnify Travelers for the payments and costs of settlement of the suit of Ogle v. Grocers, as aforesaid."

Plaintiff, Leon Simpson, then concluded his petition with a prayer that generally sought a declaration and determination of the rights, liabilities, duties and responsibilities and legal relations among the plaintiff and defendants. He further prayed that the court "determine and declare that the policy issued by American extended coverage to plaintiff and Grocers as additional insureds, thereby making American legally responsible for the sums of money and costs paid in settlement of the case of Ogle vs. Grocers aforesaid, and that said policy issued by American covers the liability of plaintiff to Grocers; * * *." He further prayed for a determination and declaration that American is legally bound to assume the defense on behalf of plaintiff of the action brought against him by Grocers.

At the trial of the instant case (the declaratory judgment action) evidence sup-

porting all of the matters we have related aforesaid was adduced. In addition representatives of Travelers and American testified and agreed that the defense of both suits, e. g. Ogle v. Grocers and Grocers v. Leon Simpson, had been tendered to American and that American in both cases refused to accept responsibility for the defense of these actions. It was the position of American that its policy did not cover the accident and injury forming the basis of this litigation.

The witnesses for American testified that the settlement of Ogle's action against Grocers was prudent and warranted when viewed as a claim against Grocers only. These witnesses testified, however, viewing Ogle's suit as a claim against Leon Simpson, there was no reason to pay Ogle anything in so far as Simpson was concerned because there was no identification of Leon Simpson as the person who was responsible for Ogle's injury.

In connection with showing Leon Simpson's part in the accident wherein Ogle was injured the deposition of Ogle was offered and admitted in evidence. In addition a signed statement of Leon Simpson was offered and admitted in evidence. Other evidence was adduced concerning Simpson's part in the accident. American contends that none of the evidence shows any responsibility on the part of Leon Simpson for Ogle's injury. In addition, American points to the failure of Ogle's petition in his suit against Grocers to join Leon Simpson as a defendant and to identify Simpson as the employee or one of the employees of Aero who performed the negligent act that caused Ogle's injury. Travelers and Grocers dispute this contention of American and they contend otherwise.

We feel the evidence relating to Leon Simpson's part in the accident causing Ogle's injury need not be stated because it is not material in view of the position we have taken with regard to the liability of American.

The Court in its declaratory judgment found that American was not obligated by its policy to defend Leon Simpson in the suit brought against him by Grocers or to pay any judgment which may be rendered in said action. The court further declared and adjudged:

"2. The Court adjudges and declares that Travelers' policy does not insure Grocers Terminal Warehouse, Inc., against liability for bodily injuries arising out of the use of the truck mentioned in evidence, and that the sum paid out by Travelers in connection with Ogle's suit against Grocers was paid by Travelers as a volunteer, and not by virtue of any legal obligation resting upon it under its policy. For that reason, in addition to the reason set out in the last previous paragraph, defendant Travelers has no right to recover said sum from defendant American, nor from plaintiff, Leon Simpson, in the suit filed by Travelers against Simpson in the name of its policyholder, Grocers Terminal Warehouse, Inc."

When it is necessary to mention Travelers, Grocers, and Simpson collectively hereinafter, we shall refer to them as appellants.

Appellants have presented many points for our consideration. Practically all the points presented depend on this court finding ambiguity in some of the language of the policy issued by American.

One of the points relied on by the appellants is that the truck was actually being loaded at the moment of Ogle's injury. Therefore, the truck was being used by Grocers and Simpson at the time of the accident and injury. They state the accident occurred under circumstances that bring it within the provision of the policy which states that use of the truck includes the loading and unloading thereof.

In another point relied on by the appellants they contend that Grocers is either

a named or an additional insured and that Simpson is an additional insured. Simpson in his petition alleged that Grocers was an additional insured and the case was tried on that theory. However, we think it makes no difference whether Grocers is a named or additional insured for the purpose of this action.

█ In connection with these two points relied on by appellants we rule that Grocers and Simpson were "using" Aero's truck and that Simpson was an additional insured at the time of Ogle's injury within Insuring Agreement III which defines insured, subject to the interpretation we have given hereinafter to Exclusion (c) in American's policy. We deem it unnecessary to further discuss these two points in view of the position we have taken with regard to the dominant issues presented by appellants.

Another point relied on by appellants and briefed and discussed extensively by them is that Section III (b) under Definition of Insured does not relieve American of its responsibility under the policy, since the injured Ogle was in the employ of Aero, while plaintiff (Simpson) was in the employ of Grocers, pointing out that Ogle and Simpson were not employed by the same employer. Hence this clause in the policy is not applicable. We need not rule or discuss this point because American has stated in its brief that it has never contended that Section III (b) of the Insuring Agreement has any application in this case.

We now discuss the remaining points relied on by appellants, which involve the question of whether or not American's policy covers Leon Simpson, as an additional insured, in the suit brought against him by Grocers. Appellants in their brief say that the basic question to be answered is, does the policy of American give coverage to Simpson under the circumstances shown. American in its brief asserts that the sole question before this court is whether American, under its policy, is

required to defend Simpson in the suit brought against him by Grocers and to pay any judgment which may be rendered in that suit. Thus, we start this discussion with agreement among the parties as to the basic question involved.

American contends that its policy in the Insuring Agreement III defines the unqualified word "insured" to include the named insured and also any person using the automobile with the named insured's permission and that Exclusion (c) states in plain terms that the policy does not cover injuries to any employee of the insured and since it is admitted that Ogle, when injured, was an employee of the insured, Aero, liability for his injury was clearly excluded from coverage, because Aero is a named insured in the policy. Opposed to this is the contention of appellants that there is a patent ambiguity as to the meaning of "insured" as used in Exclusion (c), which must be resolved in favor of coverage of Simpson else violence will be done the cardinal principle of construction of insurance policy language. Appellants further contend that the great weight of authority supports their position that "insured" means the person, named or additional insured, who is sued and who needs the protection given by the policy. They point to the fact that Ogle sued Grocers and Grocers sued Simpson and that neither defendant was the employer of Ogle.

In addition to the contention that there is ambiguity in the meaning of "insured" as used in Exclusion (c) the appellants also contend that the word "employee" as used in Exclusion (c) is ambiguous, and must, therefore, be construed favorably to the extension rather than the restriction of the policy coverage.

█ The rules governing the construction of a policy of insurance are well settled. In the case of Central Surety & Ins. Corp. v. New Amsterdam Casualty Co., 359 Mo. 430, 222 S.W.2d 76, loc. cit. 78, the court said:

" ' * * * The policy is a contract. Plain and unambiguous language must be given its plain meaning. *The contract should be construed as a whole;* but, in so far as open to different constructions, that most favorable to the insured must be adopted. State ex rel. Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614, et seq., 267 S.W. 379, 381, 382. However, as said in 14 R.C.L. § 103, p. 931, *the rule "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity when none exists."'* (Italics ours.) Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, loc. cit. 101, 57 A.L.R. 615."

█ Unequivocal language must be given its plain meaning. State ex rel. Mutual Life Ins. Co. of New York v. Shain, 344 Mo. 276, 126 S.W.2d 181. If the language is plain and unambiguous there is no occasion for construction, and it must be given effect unless contrary to public policy or positive law. This is so even when considering a restrictive provision in a policy. The rule of liberal construction in favor of the insured applies only when the contract is ambiguous and susceptible of more than one interpretation. Graham v. Gardner, Mo.App., 233 S.W.2d 797, 800.

Appellants in support of their contention that the word "employee" is an ambiguous word cite State ex rel. Maryland Casualty Co. v. Hughes, 349 Mo. 1142, 164 S.W.2d 274, 275. In that case the court was construing a provision in a policy that insured against bodily injuries "accidentally suffered or alleged to have been suffered by any person or persons not *employed* by the Assured, while within or upon" certain described premises. The sole question for determination was whether a minor who worked at raking leaves on the premises of the assureds was "employed" within the meaning of the policy provision. The court held (164 S.W.2d loc. cit. 276) that under the facts before it "The restrictive words 'not employed' are susceptible of many meanings, and therefore necessarily introduce ambiguity and leave the clause open to construction. And that construction most favorable to the assured must be adopted." In the course of construing the aforesaid provision the court said: "That the word 'employee' 'may have different meanings in different connections admits of no doubt.' 30 C.J.S. Employee, p. 226." 164 S.W.2d loc. cit. 277.

In the case before us it is conceded that Ogle was an employee of Aero, one of the named insureds. We do not have before us the same question that was before the court in the Maryland Casualty Co. case, supra. The sole question we have is whether the injury to Ogle, a conceded employee of one of the named insureds, is excluded from coverage by reason of the provision which excludes bodily injury to any employee of the insured while engaged in the employment of the insured.

█ We see no reason to hold that the word "employee" as used in the exclusion clause of American's policy is ambiguous. Its meaning is plain and unambiguous when applied to the facts of this case. The sole question in connection with the use of this word in the policy under review is whether Ogle was injured while an employee of an insured. It is conceded, as we said, that he was an employee of Aero at the time of his injury. To hold that the word "employee" as used in American's policy is ambiguous and susceptible of more than one interpretation would be a distortion of its meaning.

█ Taking up the primary question as to whether there is a patent ambiguity as to the meaning of "insured" as used in Exclusion (c) we find much difficulty has been encountered in determining who is the "insured" within the exclusionary clause. Some cases hold that the exclu-

sion applies only where the tort-feasor causing the injury employs the injured party, while others have taken the view that it is applicable in any case where the injured party is an employee of any person entitled to insurance protection under the policy, notwithstanding the fact that the actual employer has not been charged with liability. 50 A.L.R.2d 79.

Appellants cite a number of cases construing the exclusory clause of the policy strictly against the insurer. In those cases it is held that an employee of an insured other than the insured who seeks protection is not within the language of the exclusory clause. Some of the cases cited by appellants are: Sandstrom v. Clausen's Estate, 258 Wis. 534, 46 N.W. 2d 831; Farm Bureau Mutual Automobile Insurance Co. v. Smoot, D.C., 95 F.Supp. 600; New v. General Casualty Company of America, D.C., 133 F.Supp. 955; Morgan v. Greater New York Taxpayers Mutual Insurance Association, 305 N.Y. 243, 112 N.E.2d 273; Wenig v. Glens Falls Indemnity Company, 294 N.Y. 195, 61 N. E.2d 442; Maryland Casualty Company v. New Jersey Manufacturers (Casualty) Insurance Company, 48 N.J.Super. 314, 137 A.2d 577.

In the Sandstrom case, (46 N.W.2d loc. cit. 832) the court held that the exclusory clause cannot be held to "withdraw protection when the claim is made by the employee of any other than the party against whom the action is brought." However, the exclusory clause was interpreted in the light of a statute of the State of Wisconsin.

The policy in question in the Farm Bureau Mutual Automobile Insurance Co. case was issued to James F. Smoot or Dennie Smoot in the disjunctive. The basis of the court's ruling can be found in the following language of the court: "Properly interpreted, this was a coverage afforded to either or each of the persons named. With reference to the rights and liabilities of insurer and insured the policy

must be read as though it were two separate policies, one insuring James F. Smoot, and the other insuring Dennie Smoot." 95 F.Supp. loc. cit. 603. The policy in our case was issued in the conjunctive.

In the New case the court concluded that the policy involved was subject to different interpretations when applied to the situation where there is more than one person included within the meaning of the term "insured." The court then said: "This being the case, the Court must adopt an interpretation which will grant protection under the policy against the claim of the injured party." 133 F.Supp. loc. cit. 958. In other words, the court found that the term "insured" as used in the policy was ambiguous.

In the Morgan case [112 N.E.2d 274] the policy under review covered damages arising from assault and battery unless "committed by or at the direction of the Assured." An assault and battery was committed by one of the assureds. The court held that "since defendant has undertaken separate obligations to each of the assureds, an assault committed by an assured relieves the defendant insurer of its obligation to that particular assured but not of its obligations to the other assureds." However, in a dissenting opinion one of the judges said there was no coverage in view of the plain words of the policy which excluded coverage for loss occasioned by assault and battery committed by " 'any partner * * while acting within the scope of his duties as such.' " 112 N.E.2d loc. cit. 276.

In the Wenig case the problem presented was whether as a matter of law the evidence was sufficient to establish the defense of the insurer that the assured voluntarily admitted liability for the accident in violation of the terms of the policy. The evidence showed that an additional insured, the husband of the named insured, entered into an agreement with the plaintiff wherein he admitted liability for the accident. The court, in holding that the named assured was covered under the policy, said:

"* * * the obligation of the company to each assured is separable and a breach of condition or warranty by one assured does not terminate the obligation of the company to another assured." 61 N.E.2d loc. cit. 445.

In the Maryland Casualty Company case the court held that "the exclusionary language of the policy should be restricted in its application to the particular insured seeking the protection of the policy under the facts of each case as it arises." 137 A.2d loc. cit. 583.

In the aforesaid cases and others cited by appellants the tenor of the decisions is that the word "insured" as found in the omnibus and exclusion clauses of the policy is ambiguous. Therefore, it must be contrued favorably to the extension rather than the restriction of the policy coverage. No Missouri case is cited by the appellants.

Opposed to the holdings in the aforesaid cases wherein the courts found ambiguity in the language of the policies involved is the contention of American that the policy in plain terms says it does not apply to the injury of an employee of the insured, and since Ogle was an employee of the insured, Aero, the policy does not cover regardless of the form in which liability thereunder is sought to be enforced.

Simpson becomes an additional insured solely by reason of the Insuring Agreement III defining who is included in the unqualified word "insured." He was not a named insured and it seems clear that he should have no more protection under the policy than the primary insureds. The purpose of Exclusion clause (c) was to withdraw from coverage certain injuries, namely, "bodily injury to * * * any employee of the insured while engaged in the employment, * * * of the insured * *." The injury forming the basis of this litigation was Ogle's injury sustained while in the employ of the insured, Aero.

In order to adopt the contention of the appellants and the position taken in the authorities cited by appellants we would have to interpolate in the exclusion clause such words as "against whom liability is sought to be imposed," or "against whom an action is brought." This we cannot do.

"Courts cannot write provisions into contracts not written by the parties to them. They can only enforce agreements as written." Blanke Bro. Realty Co. v. American Surety Co. of New York, 297 Mo. 41, 247 S.W. 797, 801. "Courts are without authority to rewrite contracts, even insurance contracts." Forir v. Toman (Standard Accident Ins. Co., Garnishee) Mo., 202 S.W.2d 32, 34.

The question before this court in the case of Sibothan v. Neubert (Associated Indemnity Co., Garnishees) Mo.App., 168 S.W.2d 981, loc. cit. 984, was somewhat analogous to the question we are reviewing. In the Sibothan case the named insured was the daughter of the plaintiff. The mother had obtained a judgment against her daughter, Ida S. Neubert, for personal injuries sustained by plaintiff through the negligence of her daughter in the operation of the latter's automobile in which the plaintiff was riding at the time of the accident. The omnibus clause of the policy issued to the daughter provided that the unqualified term "insured" included "the named Insured, his spouse, child, parent, sister or brother * * *." [168 S.W.2d 982.] The policy provided under "Risks not covered" that whether the automobile be operated by the named insured or another, the policy did not cover "(a) claims for injury or death of the 'insured'." The issue in the case before this court was whether the insurer was liable for the injury under its policy. In ruling in favor of the insurer on the question presented, we said:

"The only question, therefore, is whether plaintiff was an 'insured' within the meaning of such exclusion clause; and of this we think there can be no doubt in view of the language of the 'additional insured' or omnibus clause, which obviously must be read

along with the 'risks not covered' clause in order to fix the measure of the obligation assumed by the garnishees under the policy."

A contention similar to appellants was made by plaintiff in the Sibothan case, namely, that the provisions in the omnibus clause were written in the policy, not for the purpose of limiting liability, but instead for the purpose of extending coverage to persons other than the "named insured" and that while plaintiff was concededly one of the "insured" within the purview of the policy in the sense that she would have been covered if she had incurred any liability to some third person, she was not to be so regarded in the case of her own personal claim against the "named insured," as to whom she stood in no different position than any other third person who might have been injured through the negligence of the "named insured" in the operation of the automobile. In disposing of this contention we said:

"It is of course true that the 'additional insured' clause was written in the policy for the primary purpose of extending and not limiting liability; and if there were no other clause to be considered upon the question of the garnishees' liability, the court would doubtless hold that they were not to be relieved of liability from the mere circumstance that plaintiff happened to be a person to whom the protection of the policy had been extended. However, the 'risks not covered' clause is no less entitled to be accorded its effect; and it provides that the policy shall not cover claims for injury of the 'insured.'" 168 S.W.2d loc. cit. 984.

The policy under review excludes liability for injury to any employee of the "insured." Aero is an insured.

In the case of Perkins v. Perkins, Mo. App., 284 S.W.2d 603, 605, the exclusion clause in the policy involved provided that the coverage did not apply "to the insured."

The named insured was injured while riding in her automobile operated by the additional insured. The court held that the policy did not cover a claim against the "additional insured" by the "named insured."

The basis of the holdings in the Sibothan and Perkins cases was that the exclusions were plain and without ambiguity, and must be enforced as written.

We stated before that there was a contrariety of opinion in the cases outside Missouri in connection with the determination of who is the "insured" within the exclusionary clause. Opposed to the cases cited by the appellants from other jurisdictions are cases cited by American, some of which we discuss briefly.

In the case of Associated Indemnity Corporation v. Wachsmith, 2 Wash.2d 679, 99 P.2d 420, 423, 127 A.L.R. 531, Carl Buss was injured in an accident while a passenger in a truck owned by R. Wachsmith, Sr., but which at the time was being operated by his son, Richard Wachsmith, Jr. At the time of the accident Buss was in the employ of R. Wachsmith, Sr., and was riding on the truck in the course of his employment. The policy in question included an omnibus clause and defined the unqualified "insured" to include "every person entitled to protection hereunder." It excluded under a clause "Risks Not Covered," "claims for injury * * * of any employee of the Insured sustained in the course of his employment * * *."

Buss recovered a judgment against Wachsmith, Jr. It was contended that the policy protected the driver, as an additional insured, and that the exclusion did not apply because Buss was not an employee of the driver. The court found there was no ambiguity in the exclusionary clause and said:

"The trial court concisely summed up the matter in his memorandum opinion, when he stated: '* * * It states that "the unqualified term 'in-

sured' shall include every person entitled to protection hereunder * * *." Certainly, the named assured is one entitled to protection under the policy; therefore, he is included within the meaning of the term "insured." Since he is so included, Buss, as his employee, comes directly within the terms of the "Risks Not Covered" paragraph.'" 99 P.2d loc. cit. 424.

The court held the insurer not liable under the policy.

The same question was presented in the case of Continental Cas. Co. v. Pierce, 170 Miss. 67, 154 So. 279, loc. cit. 281, and was ruled in favor of the insurer. In that case two employees of the named insured were riding in the named insured's automobile upon the named insured's business. One of the employees was driving when a collision occurred injuring the other employee. The injured employee sued the other employee and the employer's insured and recovered judgment against both in the trial court. The court in holding that the policy did not cover liability for injury to any employee of the named insured, said:

"* ·* * it would require the writing into the policy of something which is not there, and the striking out of something which is there, to hold that the coverage of the policy included an employee of hers who, according to the terms of the policy, was expressly excluded therefrom.

"The construction contended for by appellee is not a reasonable one."

The court in the aforesaid case went on to say that the contention was unreasonable because it would result in a holding that if the named insured had been driving the automobile and had injured an employee by her negligent driving, the policy would not have protected her, but that it would protect an additional insured under the same circumstances.

The contention of the appellants in the instant case that the exclusion clause only applies when the injured party is an employee of the one sued was rejected in the case of Birrenkott v. McManamay, 65 S.D. 581, 276 N.W. 725. In that case one employee of the named insured obtained a judgment against another employee who was an additional insured under the policy. In denying liability against the employer's insurer, the court said:

"It is the opinion of this court that when the clause in the policy protecting any person operating the insured vehicle with the consent of the assured is invoked, that the person invoking said clause is placed in the same position as the named assured. He is therefore subject to the general limitations in the policy in the same manner as the named insured would be * * *. This being true, the person invoking the policy is subject to the exemption clause stating that at no time will the insurance company be liable for the damages sustained by an employe of the named assured while engaged in the business of the named assured." 276 N.W. loc.cit. 726.

In the case of Travelers Insurance Company v. Ohio Farmers Indemnity Company, D.C., 157 F.Supp. 54, loc. cit. 60, the facts and policy provisions were similar in most respects to those presented in our case. In that case the court said:

"It is concluded by this Court that the exclusion clause of Ohio's policy did not extend coverage for injuries to an employee of the named insured or to additional insureds, both of whom are included in the unqualified word 'insured' as defined in the policy."

Other cases supporting the aforesaid cases cited by American and examined by us are Employers' Liability Assurance Corp. v. Owens, Fla., 78 So.2d 104; Webb v. American Fire & Casualty Co., 148 Fla. 714, 5 So.2d 252; Gibbs v. Employers Mut. Liability & Ins. Co. of Wis., 224 N.C. 462, 31 S.E.2d 377.

We have demonstrated the difference of opinion that exists in the cases in determining who is the "insured" within the exclusionary clause of the type of insurance policy under review in this appeal. Exclusion clause (c) in American's policy clearly excludes from coverage "bodily injury to * * * any employee of the insured while engaged in the employment, * * * of the insured * * *." The omnibus clause III of the Insuring Agreement defines the unqualified word "insured" as the named insureds and all additional insureds. The exclusion clause was concerned with the hazards to which the policy did not apply and it should be interpreted in terms of the injuries to be excluded, not in the terms of the persons who are to be indemnified. Standard Surety & Casualty Co. of New York v. Maryland Casualty Co., 281 App.Div. 446, 119 N.Y.S.2d 795, loc. cit. 799; 281 App.Div. 1069, 121 N.Y.S.2d 767.

 We find no ambiguity in the use of the word "insured" in the exclusion clause. Its meaning when used in any clause of the policy was clearly defined in the omnibus clause of the policy. We have no right to find ambiguity where none exists merely for the purpose of invoking the rule that where ambiguity exists the construction most favorable to the insured must be adopted. As we said earlier, we are not permitted to exercise inventive powers or engage in perversion of language for the purpose of creating an ambiguity when none exists. Central Surety & Ins. Corp. v. New Amsterdam Casualty Co., supra.

Included in the points relied on by appellants is one that a policy covering an additional insured or insureds is in legal effect two policies of insurance; one a contract between the insurer and the named insureds and the other a contract between the insurer and the additional insureds and even though one of them shall be denied coverage, that alone will not prevent coverage of the others, despite the fact that the additional insureds' coverage may be broader than the named insureds'. It seems to us that the proposition contains its own condemnation. There is only one contract of insurance contained in American's policy and it must be construed as a whole. The additional insureds cannot claim coverage under the omnibus clause, which gives them coverage as additional insureds through definition of insureds, and then seek to ignore that very definition that gives them coverage, when considering the exclusion clause. The contention of appellants is unsound.

We rule that American's policy does not cover the injury sustained by Ogle. American was not obligated to defend the suit brought by Grocers against Simpson and obviously, from what we have said, American was not obligated to defend Ogle's suit against Grocers.

 In a final point relied on by appellants they contend that the exclusionary clause covers two subjects: (a) liability for "bodily injuries" to an employee of "insured" while engaged in the employment of the "insured"; and (b) "bodily injuries" to an employee to whom "insured" is liable under a workmen's compensation law. That part of Exclusion (c) which refers to benefits payable or required to be provided under any workmen's compensation law has reference and application to employees while engaged in domestic employment. It has no application to employees engaged in employment other than domestic. The sentence referring to workmen's compensation benefits clearly modifies the words "domestic employment." Ogle was not engaged in domestic employment and appellants make no such contention. This point is ruled against appellants.

 The trial court in paragraph 2 of its declaratory judgment found and declared that Travelers' policy does not insure Grocers against a claim based on Ogle's injury. While it is true that Simp-

**532**

son in his petition in the instant case asked for a determination and declaration of the responsibilities and legal relations of plaintiff and defendants to each other, we cannot see that Simpson has any right to have a declaration on the question whether Travelers' policy extended coverage to Grocers for Ogle's injury. Grocers and Travelers have raised no such issue and neither has prayed for affirmative relief. It is fundamental in a declaratory judgment action that there be a justiciable controversy between plaintiff and the defendants. The action of Grocers against Simpson seeks to fix liability on Simpson for Ogle's injury. It alleges that Simpson's negligent act caused Ogle's injury. Grocers cause of action against Simpson presents no controversy between Grocers and Travelers. In connection with Grocers action Simpson called upon American to defend the action. This American refused to do. Thus, the only justiciable controversy presented is one between Simpson and American. Simpson has no interest in any other controversy. And this is true even though Grocers action against Simpson is a subrogation action by Travelers.

That the aforesaid was the only controversy presented to the trial court can be taken from the statement made by Mr. Evans, attorney for Travelers, in the course of the hearing below, when he said:

"* * * the immediate question in this declaratory judgment suit is whether or not American Automobile under the policy is required to defend Leon Simpson against these charges that are made in the Grocers Terminal suit against him. He is demanding that they defend him and hold him harmless and indemnify him against any loss brought against him by Grocers Terminal. Now this other is all background, of course * * *."

Mr. Sheppard when asked by Mr. Evans, following the aforesaid statement, "Isn't that the theory?" answered, "Yes, sure."

In appellants' brief they said "We need not discuss whether or not Travelers voluntarily paid the settlement money" stating that is a matter to be determined if American is sued by Grocers or Travelers.

Pursuant to what we have said, Paragraph (1) of the trial court's "Declarations of Law" is affirmed and Paragraph (2) is reversed and ordered stricken and in lieu thereof the trial court is directed to declare that no other justiciable controversy was presented by plaintiff's petition and evidence and, therefore, all other declarations and relief prayed for are denied. In all other respects the trial court's judgment is affirmed. The trial court is directed to amend its findings of fact to conform with the views herein expressed.

ANDERSON, J., and MARSHALL CRAIG, Special Judge, concur.